William C. KIRKWOOD and Viola J. Kirkwood, Appellants (Plaintiffs),

v.

Gus I. KELLY, McNamara Realty and William E. McNamara, Appellees (Defendants).

No. 89-237.

Supreme Court of Wyoming.

July 17, 1990.

**892**

Patrick M. Hunter, Casper, for appellants.

Phillip T. Willoughby, Casper, for appellees McNamara Realty and William E. McNamara.

Jerry A. Yaap, Casper, for appellee Gus I. Kelly.

Before THOMAS, URBIGKIT and MACY, JJ., and GUTHRIE and RAPER, JJ., Retired.

RAPER, Justice, Retired.

Appellants sued appellees charging that Kelly (appellee), agent for McNamara (appellee), negligently failed to advise appellants that Roussalis intended to purchase their home at a foreclosure sale. Appellants also claimed that Roussalis would have purchased their home for $600,000 or more and the current value has dropped to $400,000, leaving them damaged in the sum of $200,000. The complaint was later amended to charge that, had Kelly properly performed his fiduciary duty as a real estate salesman to the Kirkwoods (appellants), they would have sold their property to Roussalis for about $300,000 and claimed damages in that amount. The trial court found in favor of appellees on the latter's motion for summary judgment and appellants' action was dismissed. The appellants set out the issues as:

A. Whether the findings and conclusions of the trial court are correct?

B. Whether the trial court's finding that there was no causal connection between the alleged breach of duty and the alleged damages is reversible error?

Appellees state:

1. Did the trial court err finding no causal connection between the alleged breach of duty by appellee Gus Kelly and the alleged damages claimed by appellants, and, therefore erred finding no issue of material fact existed and as a matter of law appellees were entitled to an order dismissing the appellants' cause of action.

We will affirm the trial judge.

The record discloses the facts to be substantially as narrated by appellees in their brief and we set them out as a matter of convenience in basically the same language, changed as required to fit the format of this opinion. This matter was previously before this court in a suit by Roussalis against the same appellees wherein Roussalis obtained a judgment affirmed in *Kelly v. Roussalis*, 776 P.2d 1016 (Wyo. 1989). We see the facts there related to be compatible with the facts here.

Appellants executed a listing with Caldwell Banker, Luker Realty on August 12, 1986, for the sale of their home at 5600 South Poplar Street, Casper, Wyoming. On November 22, 1986, appellee Kelly, a salesman for McNamara Realty, under multi-listing arrangement, showed the property to Roussalis. The property was listed for $695,000. Following the viewing of the home, Roussalis told Kelly he would not pay more than $300,000 for the home. Roussalis never made an offer to purchase appellants' home.

On December 3, 1986, Roussalis saw an advertisement in the *Casper Star–Tribune* which was a mortgage foreclosure notice of property owned by appellants in Garden Creek Acres. (It was later learned appellants owned two properties in Garden Creek Acres.) Roussalis telephoned appellee Kelly and asked if this was the same property he had previously viewed. Kelly ultimately, but incorrectly, told Roussalis it was the same property.

Roussalis then persuaded appellee Kelly, after some resistance by Kelly, to attend the foreclosure sale and bid the property in for $150,000 on behalf of Roussalis. Later it was determined that the property purchased by Roussalis for $150,000 at the foreclosure sale was the wrong property, not the property previously viewed.

Appellants now sue appellees for breach of fiduciary duty and conspiracy to deprive appellants of their interest in their home. The present matter came before the district court upon a motion for summary judg-

ment, and the court found that there was no genuine dispute as to any material issue of fact and that all defendants were entitled to summary judgment as a matter of law. Specifically the trial court found:

> Assuming, for the purposes of argument, that the defendant Kelly breached his duty as alleged in the amended complaint, there is no evidence to indicate any causal connection between the alleged breach and the alleged damages. Any relationship between the breach and damages is based upon speculation only.

The trial court, in its decision denying appellants' motion for reconsideration, stated: "Among other things, the motion for reconsideration overlooks the fact that Dr. Rousallis [sic] never did make an offer on the property." We have no disagreement with the observations of the trial judge in granting appellees summary judgment. Roussalis did not present a written offer to appellants for purchase of the property. At best appellants can only claim that Roussalis, in an off-hand remark, indicated that he would not pay more than $300,000 for the property. Roussalis did not direct Kelly to prepare an offer to appellants. Appellants have not and cannot present evidence to show they lost a sale due to Kelly. Appellants continue to live in the house at the present time.

Appellants admit in their response to an interrogatory by McNamara:

> List the minimum selling price Plaintiffs would have accepted for purchase of the house during the times it was listed with Luker. Referencing paragraph 20 of the Plaintiffs' Complaint, provide all evidence, whether documentary or testimonial, that Plaintiffs will rely on to prove at trial that Roussalis would have paid in excess of $600,000.00 for the property.
>
> Answer: $625,000.00 was listed as the minimum selling price on the exclusive right to sell agreement. Plaintiffs may or may not have taken a lower offer depending upon the circumstances and details of said offer. At the present time the Plaintiffs have not determined what testimony and documents they will utilize at trial. When such determination is made the same will be provided.

Roussalis made arrangements to borrow $250,000 which he could use to bid at the bankruptcy foreclosure sale.

After the trial court entered its order dismissing appellants' cause of action on summary judgment, appellants filed a motion for reconsideration and an affidavit by the appellant, William Kirkwood. The thrust of the motion for reconsideration and Kirkwood's affidavit is that appellants, after the case had been dismissed by the trial court, would accept $300,000 for the property, a significant reduction in price to say the least.

> Describe all circumstances, produce for inspection all documentary evidence, and summarize all testimonial evidence that Plaintiffs rely on for their claim of punitive damages.
>
> Answer: Plaintiffs have not determined what evidence and testimonial evidence that will be presented at trial that will support their claims for punitive damages. The same will be provided as the same becomes available.

At no time, including materials submitted in opposition of summary judgment, did appellants elaborate on what evidence they had to support their claim for punitive damages.

W.R.C.P. 56(c) sets out the rule for granting a summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

There are no genuine issues of fact disclosed by the file, as indicated in the foregoing statement of facts. The moving appellees are thus safely over the first hurdle of the dual test. Any of the "material" facts *contended* by appellants would not be based on anything but conjecture and speculation as observed by the trial judge and to which we agree, and thus are inadmissible.

There are statutory reasons why appellants could not recover as a matter of law. If the appellants have any idea that the Roussalis remark that he would not pay over $300,000 was an offer that appellees should have reduced to writing by Kelly assumes that Kelly must not exercise judgment with respect to interest of a prospective buyer. It is obvious that he did not treat it as worthy of much attention. He did not read it as worthy of such a step, nor do we, particularly in the face of an asking price of $695,000 as any indication that appellants would consider less than the listed price (recall minimum of $625,-000). The appellants seem to think that the $300,000 off-hand comment was an offer. It certainly does not fall within the Wyoming statute of frauds. W.S. 1–23–105(a)(v).[1] It is inconceivable that by conjecture the allegedly tortious conduct by Kelly can be converted into an agreement not covered by the ancient statute of frauds so bred into our jurisprudence. We do not rely on this in our decision but only note its arguability in passing.[2]

We can also note an argument with respect to *Hagar v. Mobley*, 638 P.2d 127 (Wyo.1981) that a real estate salesman or broker must be meticulously honest because of the public stature of his license. This lacks the clear-cut features of the rule we eventually adopt so we avoid deciding the case on that basis.

We do not consider Roussalis as a ripe enough prospect for Kelly to suggest that he make an offer. Appellants' come lately statements that they would have accepted $300,000 are afterthoughts and not convincing.

1. W.S. 1–23–105(a)(v) reads in pertinent part:
    (a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum *thereof be in writing*, and subscribed by the party to be charged therewith:

    \*   \*   \*   \*   \*   \*

    (v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year[.]

2. Counsel for appellees cites us to W.S. 33–28–111(a)(xiii) setting out various grounds for censure of brokers and salesmen that perhaps result in suspension or revocation of license:

We conclude that the only viable and clear-cut rule, followed by the district court, controlling this case is that found in *DeWald v. State*, 719 P.2d 643, 651 (Wyo. 1986), ruling that: "Where the causal connection between defendant's acts and plaintiff's damage is almost entirely subject to conjecture and speculation, summary judgment may be proper." We are inclined to believe that appellants' guessing approached the preposterous. An age-old observation of some wise sage that "you cannot make a silk purse out of a sow's ear," certainly applies here.

This case is an ideal one to dispose of by summary judgment. It avoids a further waste of judicial resources and unnecessary expense to litigants in an already too expensive system of justice.

Affirmed.

"Failing to submit all offers in writing to a seller, if received prior to written acceptance of any offer." We cannot see that this indicates a requirement that anything less need not be transmitted to the seller. We agree that only written offers have any value and are good practice but this does not clearly state that oral offers, even if made, need not be transmitted. Rule 9(a) of the Real Estate Commission Regulations only sets out requirements of written offers. These contained in appellees' casual remarks cannot be found there necessary details nor do they appear anywhere else.