BOARD OF COUNTY COMMISSIONERS OF TETON COUNTY, by and on Behalf of the TETON COUNTY SHERIFF'S DEPARTMENT, Appellants (Defendants),

v.

Rayce B. BASSETT and Patricia Bassett; and Michael Coziah and, Sonia Coziah, Appellees (Plaintiffs).

State of Wyoming, by and on behalf of the Wyoming Highway Patrol, Appellant (Defendant),

v.

Rayce B. Bassett and Patricia Bassett; and Michael Coziah and, Sonia Coziah, Appellees (Plaintiffs).

Nos. 98–342, 98–343.

Supreme Court of Wyoming.

July 25, 2000.

the Teton County Sheriff's Department: Paul K. Knight of Mullikin, Larson & Swift LLC, Jackson, Wyoming.

Representing State, by and on behalf of the Wyoming Highway Patrol: Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; Dennis M. Coll, Senior Assistant Attorney General; and Francisco L. Romero, Assistant Attorney General, Cheyenne, Wyoming.

Representing Appellees: David G. Lewis, Jackson, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY *, and GOLDEN, JJ., and GRANT, D.J.

GRANT, District Judge.

These appeals are from the judgment on a jury verdict against officers of the Wyoming Highway Patrol and the Teton County Sheriff's Department after trial of appellees' claim that the officers were at fault in the establishment and operation of a roadblock to stop a fleeing suspect on U.S. Highway 89 north of Jackson, on March 15, 1995. Appellees were driving toward Jackson when they encountered the roadblock and, at the direction of the officers, passed through it just ahead of the high-speed flight of the suspect, Steve Ortega (Ortega), whose car crashed into appellees' vehicle just after it cleared the roadblock. Police had pursued Ortega, who was wanted in two jurisdictions and considered armed and dangerous, from Dubois where they first saw him.

These appeals present three issues: (1) whether the jury should have been instructed that police officers can be held liable to innocent bystanders who are injured when struck by the fleeing suspect, only if police conduct was extreme and outrageous; (2) whether the fleeing suspect who collided with appellees' car should have been included on the verdict form as an actor whose conduct would be compared by the jury in allocating fault pursuant to Wyo. Stat. Ann. § 1–1–109 (Lexis 1999), Wyoming's comparative fault statute; and (3) whether one of the officers was entitled to qualified immunity from suit.

Representing Board of County Commissioners of Teton County, by and on behalf of

* Retired June 2, 2000.

The district court held the police to the standard of the ordinarily prudent police officer in similar circumstances, refused to include Ortega among those whose fault was compared, and rejected the claim of qualified immunity. We will reverse and remand for trial with Ortega included on the verdict form as an actor whose conduct must be compared with that of the appellants in allocating fault, and with an appropriate instruction on proximate cause.

The Wyoming Highway Patrol pursued Ortega from Dubois at high speeds. Ortega repeatedly swerved from his own lane toward oncoming traffic, and otherwise presented a menace to the traveling public in an apparent attempt to cause a crash which would divert the pursuing officers or involve them in a crash. These efforts failed, but the officers were unable to stop Ortega making the roadblock necessary.

The Wyoming Highway Patrol requested that the roadblock be established at Moran Junction, but the Sheriff's deputies, who had been requested to assist, decided to establish the roadblock farther south, beyond the intersection of U.S. Highway 89 and Antelope Flats Road. At that location, they placed improvised road spikes in the hope that Ortega would turn off of the highway onto the road and be stopped when the spikes disabled his vehicle. Ortega did not turn off of the highway, and continued on until he was stopped by the crash just on the Jackson side of the roadblock.

As these events were unfolding, appellees, Michael Coziah (Coziah) and Rayce Bassett (Bassett), were enroute home from fishing at Coulter Bay. As they approached Moran Junction, where they would turn south toward Jackson, they passed several officers who were at the right of the road. These were Sergeant Wilson of the Wyoming Highway Patrol and park police whom he was briefing. None of these officers made any effort to warn appellees of the hazardous situation developing on U.S. Highway 89 onto which appellees' vehicle turned.

As appellees approached the roadblock, surprised officers began frantically gesturing for them to go through as a deputy sheriff moved his car for their passage. Ortega, approaching at 100 miles per hour or more, went through the same opening, smashing into Coziah's car which was going approximately thirty miles per hour. Coziah and Bassett were injured, and Ortega was arrested.

Appellees sued the Wyoming Highway Patrol and Sheriff's officers alleging that they were negligent in pursuing Ortega, failing to warn appellees of the danger, and in operating the roadblock. At the close of the evidence, appellants sought instruction to the jury that the officers could be liable only if their conduct was extreme and outrageous, citing *DeWald v. State*, 719 P.2d 643 (Wyo. 1986). They also objected to the absence of Ortega from the verdict form as a non-party actor whose fault must be compared with that of appellants. The State moved for judgment for Sergeant Wilson on the basis of qualified immunity.

In rulings which are the basis of these appeals, the district court refused appellants' motion for judgment as to all but two of the named officers, ruled that *DeWald* did not apply in the circumstances shown by the evidence, rejected the claim of qualified immunity, and refused to include Ortega as an "actor" on the grounds that his conduct was willful and wanton, citing *Danculovich v. Brown*, 593 P.2d 187 (Wyo.1979). The verdict form included as those whose fault should be compared Coziah, who was driving appellees' car, the Wyoming Highway Patrol, the Sheriff's officers, and as a non-party, the National Park Service. The jury allocated 0% fault to Coziah, 40% fault to the Wyoming Highway Patrol, 20% fault to the Sheriff's officers, and 40% fault to the National Park Service.

Alleged errors in instructions and form of verdict are reviewed to determine if the instructions present an accurate statement of the governing law. *Betts v. Crawford*, 965 P.2d 680, 686 (Wyo.1998) (*quoting State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 832 (Wyo.1994)). We review denial of the motion for judgment as a matter of law taking as true all of the nonmoving party's evidence with its reasonable inferences, affording no deference to the dis-

trict court's determination, to inquire whether a reasonable jury could reach but one verdict. *Anderson v. Duncan,* 968 P.2d 440, 442 (Wyo.1998).

■ Since it is dispositive, we turn first to the question of whether Ortega, whose conduct was willful and wanton or intentional, should have been included among the actors whose fault would be determined and compared with that of the other actors by the jury in apportioning fault among the actors as required by Wyo. Stat. Ann. § 1–1–109. Appellees contend, and the district court held, that Ortega's willful and wanton or intentional conduct could not be compared with the conduct of appellants, citing *Danculovich* for the proposition that the conduct of a willfully and wantonly negligent, or by necessary implication, intentional tortfeasor ("willful actor") cannot be compared under Wyo. Stat. Ann. § 1–1–109 with that of a merely negligent ("negligent") actor because the two varieties of conduct, willful and negligent, differ not merely in degree but in kind and therefore cannot be compared. We disagree for several reasons.

Unlike the version before the 1994 amendment to Wyo. Stat. Ann. 1–1–109, which used "negligence," its present iteration introduces the more inclusive term "fault" and defines it as including conduct that is "in any measure negligent" eliminating degrees or varieties of negligence consistent with one of the purposes of the statute, that is to ameliorate the harshness of the doctrine of contributory negligence. The comparative negligence statute remedied the injustice of the doctrine of contributory negligence by stating that a plaintiff's negligence prevents recovery only in proportion as it causes plaintiff's damages.

■ The use of the word "includes" is significant because "includes" generally signifies an intent to enlarge a statute's application, rather than limit it, and it implies the conclusion that there are other items includable, though not specifically enumerated. *Federal Land Bank of St. Paul v. Bismarck Lumber Co.,* 314 U.S. 95, 100, 62 S.Ct. 1, 4,

86 L.Ed. 65 (1941); *Paramount Gen. Hosp. Co. v. National Medical Enterprises, Inc.,* 42 Cal.App.3d 496, 117 Cal.Rptr. 42, 47 (1974); *Freedom Newspapers, Inc. v. Tollefson,* 961 P.2d 1150, 1154 (Colo.App.1998); *Schwab v. Ariyoshi,* 58 Haw. 25, 564 P.2d 135, 141 (1977); *Janssen v. Janssen,* 331 N.W.2d 752, 755–56 (Minn.1983); *Zorba Contractors, Inc. v. Housing Authority of City of Newark,* 282 N.J.Super. 430, 660 A.2d 550, 551 (1995); *Matter of Estate of Corwin,* 106 N.M. 316, 742 P.2d 528, 529 (1987); *North Carolina Turnpike Authority v. Pine Island, Inc.,* 265 N.C. 109, 143 S.E.2d 319, 327 (1965); *Lucke v. Lucke,* 300 N.W.2d 231, 234 (N.D.1980); *Bradshaw v. Joseph,* 164 Vt. 154, 666 A.2d 1175, 1176 (1995).

Appellees insist this is not so because the words "reckless," "wanton," "culpable" or "intentional" were stricken from the definition of "fault" in Senate File No. 35 [1] evincing clear intent that they were not included in the definition of "fault" as conduct "in any measure negligent." This argument reads more into the deletion than we think justified. It leaves unexplained the legislature's expansion of "negligence" to "fault" which includes conduct "in any measure negligent." It may be as reasonable to attribute the deletions to a belief that the deleted words are subsumed in the phrase "in any measure negligent" as it would be to attribute them to other motives.

■ As the language of the statute clearly is broad enough to encompass willful and wanton conduct, we must determine whether the legislature intended such inclusion. We begin with the proposition that when the legislature amends a statute, some change in the existing state of the law was intended and that the court should endeavor to make such amendment effective. *Brown v. State,* 590 P.2d 1312, 1314 (Wyo.1979); *DeHerrera v. Herrera,* 565 P.2d 479, 483 (Wyo.1977). Obviously, the amendment to the statute changed the law to compare strict and products liability with negligent conduct, but the changes go beyond that. Defining "fault" as broader than the conduct explicitly

1. Senate File No. 35 was the bill introduced in the 1994 session of the Wyoming State Legislature that ultimately was adopted as Wyo. Sess. Laws ch. 98, § 1 (1994) to amend Wyo. Stat. Ann. § 1–1–109.

stated evidences an intention to compare all species of culpable conduct. We have a duty to effectuate this intent, and therefore, hold that willful conduct must be compared with negligence under Wyo. Stat. Ann. § 1–1–109.

Application of Wyo. Stat. Ann. § 1–1–109 in this case to include Ortega as an actor[2] is also consistent with the other purpose of the statute, the elimination of joint and several liability. Subsection (e) provides that "[e]ach defendant is liable only to the extent of that defendant's proportion of the total fault * * *." To leave an actor such as Ortega out of the apportionment calculation exposes the remaining appellants to the possibility that they will be held to answer for his misconduct. Such a result does act as an incentive to those with a duty to protect against intentional harm, and "[a] number of courts therefore have concluded that persons who negligently fail to protect against the specific risk of an intentional tort should bear the risk that the intentional tortfeasor is insolvent." Restatement (Third) of Torts § 24 cmt. b at 164 (Proposed Final Draft (Revised) 3/22/99). The statutory elimination of joint and several liability, however, forecloses our consideration of the merits of such a policy. The legislature has clearly opted to relieve joint tortfeasors of liability beyond that for which they bear proportional fault rather than shift the burden of insolvency of one joint tortfeasor to the others for the protection of potential plaintiffs.

Contrary to appellees' argument, our application of Wyo. Stat. Ann. § 1–1–109 is not precluded by *Danculovich*. Brown, while driving under the influence of alcohol and exceeding the speed limit, failed to negotiate a curve causing a rollover crash in which Danculovich was killed. *Danculovich*, 593 P.2d at 190. The trial court ruled that the record would not support a finding by the jury of willful and wanton misconduct for punitive damages and removed the issue

from the jury's consideration. *Id.* at 192. On appeal, we held that there was sufficient evidence for the jury to have found willful and wanton misconduct for punitive damages and so reversed and remanded. *Id.* at 194.

In dicta, we added that Danculovich's ordinary negligence, if any, could not be compared with Brown's willful and wanton conduct—if such the jury found—because, we said, the trial court may have ruled as it did out of fear that the jury would be confused by comparing negligence, gross negligence (as then required by the so-called "guest statute," since invalidated, *Nehring v. Russell*, 582 P.2d 67 (Wyo.1978)), and willful and wanton conduct. *Danculovich*, 593 P.2d at 194–96. Justices Rose and McClintock, specially concurred, warning that the issue on which our dicta pronounced was not raised below or addressed by the trial court, was not raised or briefed by the parties in this court, was not warranted by the record, and the dictum was unnecessary and unwise. *Danculovich*, 593 P.2d at 196–99. Whether or not our decision today vindicates the views of Justices Rose and McClintock, there are substantial elements distinguishing *Danculovich* from the case we now consider. At the time the case was decided, Wyo. Stat. Ann. § 1–1–109 used only the phrase "negligence" not "fault" which includes conduct "in any measure negligent." The "guest statute," which required a plaintiff to prove "gross negligence" was in effect; subsection (e) limiting a defendant's liability to his apportionment of negligence was not present; and importantly, the comparison was of the conduct of only the plaintiff and the defendant driver—not the conduct of another "actor."

Appellants reiterate their contention that *DeWald* justifies their insistence at the instruction conference that an instruction should have been given to the jury that the actions of the police officers could result in

---

**2.** We note that other jurisdictions that have considered whether willful and wanton misconduct can be compared to mere negligence have reached different conclusions. *See* Annotation, *Application of Comparative Negligence in Action Based on Gross Negligence, Recklessness, or the Like*, 10 A.L.R.4th 946, 948–52 (1981); Allan L. Schwartz, Annotation, *Applicability of Comparative Negligence Principles to Intentional Torts*, 18

A.L.R.5th 525, 533–40 (1994); *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill.2d 429, 170 Ill.Dec. 633, 593 N.E.2d 522, 528–32 (1992); and *Martel v. Montana Power Co.*, 231 Mont. 96, 752 P.2d 140, 143 (1988). As our legislature has plainly directed such comparisons, we need not consider the various arguments on either side of the issue.

liability only if the jury found "extreme or outrageous conduct" on the part of the officers. Appellants insist here that *DeWald* established a duty or standard of care for police officers different from that to which others are held; that is, not a duty to act as ordinarily prudent police officers would act in like circumstances to avoid undue risk of harm to citizens, but only to avoid undue risk of harm by conduct that is extreme and outrageous. Appellants misapprehend the significance of *DeWald*, because *DeWald* advanced no such separate or different duty or standard of care. In that case, we held that the facts precluded a finding of causation of the plaintiff's damages by the officer's conduct.

DeWald was killed when, as he waited for a traffic light to change at an intersection near downtown Laramie, Maddox crashed into DeWald's car with his vehicle. Highway Patrol officers had endeavored to stop Maddox just outside of Laramie for driving while intoxicated. Maddox did not stop when signaled to do so by the patrolmen, and they pursued him, but dropped back when the speed of the chase reached fifty-five miles per hour. *DeWald*, 719 P.2d at 645. In the wrongful death claim against the State of Wyoming, the district court granted the State's motion for summary judgment on the basis of common law qualified immunity, which we recognized in *Kimbley v. City of Green River*, 663 P.2d 871, 883 (Wyo.1983). *DeWald*, 719 P.2d at 646. This Court held that the implied immunity defense did not apply to operational functions of the patrolmen, which do not qualify as the basic, discretionary, policy-making type of functions that the defense of qualified immunity protects. *DeWald*, 719 P.2d at 649.

We affirmed the summary judgment, but not because we applied a standard of care other than the one set forth in *Keehn v. Town of Torrington*, 834 P.2d 112, 114 (Wyo. 1992). Instead, we said:

The liability of a police officer for pursuing a law violator who becomes involved in an accident causing damage to a third person has not before been considered by this court. A review of the decided cases exhibits a considerable reluctance to find the officers liable where they are not involved in the accident.

The policy reasons stated are that the officer has a duty to apprehend, arrest and remove from the highways drunk drivers; that if, in the performance of his job as a patrolman, he must choose whether to pursue or allow a lawbreaker to escape, he should not be liable for either choice in the absence of gross or wanton conduct almost amounting to bad faith; that he should be responsible only for the careful operation of his own car; and that he should not be liable for the unpredictable actions of the driver being pursued for that would make him an insurer of the wrongful acts of a lawbreaker. All of the above seem to essentially say that, except in extreme or outrageous circumstances, an officer's pursuit of a vehicle which is involved in an accident not involving the officer's vehicle is not the proximate cause of that accident.

\* \* \*

We agree with these courts and hold that when a police officer pursues a fleeing violator and the violator injures a third party as a result of the chase, the officer's pursuit is not the proximate cause of those injuries unless the circumstances indicate extreme or outrageous conduct by the officer. To put it another way, the possibility that the violator will injure a third party is too remote to create liability until the conduct of the officer becomes extreme.

*DeWald*, 719 P.2d at 649–50.

The nature of the duty applied in *DeWald* is the same as the duty articulated in *Keehn*, 834 P.2d at 114, in which *DeWald* is cited. The causation feature of *DeWald* was emphasized in a later case:

"Proximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence. The law does not charge a person with all the consequences of a wrongful act, but ignores remote causes and looks only to the proximate cause." *DeWald v. State*, Wyo., 719 P.2d 643, 651 (1986) (citation omitted).

*Harmon v. Town of Afton*, 745 P.2d 889, 891 (Wyo.1987).

Even so, the appellants were entitled to have the district court give the offered instruction. We have identified the elements of a cause of action or claim for negligence as:

[T]he defendant owed a duty to the plaintiff; the defendant breached that duty; the defendant's breach proximately caused the plaintiff's injuries; and the plaintiff was injured. *Anderson v. Duncan*, 968 P.2d 440, 442 (Wyo.1998) (*citing Turcq v. Shanahan*, 950 P.2d 47, 51 (Wyo.1997); *Daily v. Bone*, 906 P.2d 1039, 1043 (Wyo.1995)). To prevail, the plaintiff must prove all four elements of the negligence claim. *Bird v. Rozier*, 948 P.2d 888, 892 (Wyo.1997).

*Kirby v. NMC/Continue Care*, 993 P.2d 951, 954 (Wyo.1999). In *Keehn*, 834 P.2d at 115, we said:

The elements that a plaintiff must establish to maintain a negligence action in a court of law are: (1) that the defendant owed to the plaintiff a duty to conform to a specified standard of care; (2) that the defendant breached the duty of care; (3) that the defendant's breach of the duty of care proximately caused injury to the plaintiff; and (4) that the injury sustained by the plaintiff is compensable by money damages. *See, MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo.1990); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 30 (5th ed.1984). Elements (1) and (2), duty and breach of duty, address whether the conduct of the alleged tortfeasor was in fact negligent. Element (3), proximate cause, is considered only after negligence is first established to determine whether the tortfeasor should be legally responsible for his negligence. Finally, element (4), injury/damages, is considered to determine the extent of the tortfeasor's liability to the plaintiff if the foregoing issues are resolved affirmatively.

It is clear, upon careful analysis, that *Keehn* is concerned with the duty elements of the claim while the aspect of *DeWald* that the appellants rely upon as stating the duty really addresses the element of causation. *Kirkwood v. Kelly*, 794 P.2d 891, 894 (Wyo. 1990). That distinction was established many years ago in *York v. North Central Gas Co.*, 69 Wyo. 98, 115, 237 P.2d 845, 850 (1951) (emphasis in original):

The elements of a cause of action for negligence are set out in Restatement of Torts, § 281, and Prosser on Torts, p. 177. In this case, we refer to only two of these elements which we distinguish by calling one the negligence question, the other the causation question. *See Martin v. Herzog*, 228 N.Y. 164, 170, 126 N.E. 814, 816. To establish **actionable** negligence plaintiffs had the burden of proving not only that the break in the line was due to defendant's lack of care (the negligence question), but also that the escaping gas was the gas that exploded in the building (the causation question).

Both *DeWald* and *Keehn* must be accounted for in the instructions to the jury in a case like this. It is essential that the concepts of *DeWald* and *Keehn* remain distinct rather than merged. One deals with proximate cause; the other deals with duty. Both are elements of the cause of action for negligence, and, under circumstances such as these, those elements must be correctly explained to the jury. The product of our analysis is that the district court should have instructed the jury to follow the causation standard announced in *DeWald* in determining the liability of the police officers and their respective employers in this instance.

The activities of the law enforcement officers in this case, although different in detail, cannot be distinguished from "an officer's pursuit of a vehicle which is involved in an accident not involving the officer's vehicle." *DeWald*, 719 P.2d at 649. The officers here were engaged in an effort to stop a violator of the law. If one of them had been in front of Ortega, instead of following him, as was the case in *DeWald*, surely the rule of causation announced in *DeWald* would be applicable. If the lead officer were far enough ahead of the fleeing violator to endeavor to structure a roadblock to stop that person, logic demands that the same standard be applied. It was reversible error to fail to instruct on the causation rule announced in *DeWald*.

A closely related issue is raised by the State's contention that Sergeant Wilson should have been granted judgment as a matter of law on the basis of qualified immunity. We do not agree because our prior cases, including *DeWald*, are to the contrary. The Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101 through 1–39–121 (Lexis 1999), retains sovereign immunity except as specifically provided by statute. *Hurst v. State*, 698 P.2d 1130, 1132 (Wyo. 1985). The relevant statutory exception here is Wyo. Stat. Ann. § 1–39–112, which provides:

> A governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties.

Despite this exception, we have stated that

> "a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct. * * * "

*Blake v. Rupe*, 651 P.2d 1096, 1109 (Wyo. 1982), *cert. denied*, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *cert. denied*, 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1978)).

Determination of a peace officer's entitlement to qualified immunity under state law is governed by consideration of four factors: (1) the officer was acting within the scope of his or her duties; (2) the officer was acting in good faith; (3) the officer's acts were reasonable under the circumstances; and (4) the officer's acts were discretionary duties and not merely operational or ministerial duties. *Kanzler v. Renner*, 937 P.2d 1337, 1344 (Wyo.1997); *Darrar v. Bourke*, 910 P.2d 572, 575–76 (Wyo.1996). The parties do not dispute that Sergeant Wilson was acting within the scope of his duties and in good faith, but they cannot agree on the reasonableness of Sergeant Wilson's actions, or inaction, and whether that action or inaction was discretionary. We find no discretionary activity here, and therefore, need not consider the reasonableness of Sergeant Wilson's conduct.

Qualified immunity is available only for discretionary functions, *DeWald*, 719 P.2d at 649, and it is the character of an official's act, rather than the character of his office, which determines whether any particular act is discretionary. *Oyler v. State*, 618 P.2d 1042, 1048 (Wyo.1980). The term "discretionary" in the context of a qualified immunity question is a misnomer. It has long been understood to be limited to executive policy functions. *Id.* Other jurisdictions, dealing with equivalent doctrines, have determined that discretionary duties are strictly limited to acts within the special competence of the executive branch. The Washington Supreme Court has said that "[s]ince the concept of discretionary governmental immunity is a court-created exception to the general rule of governmental tort liability, its applicability is necessarily limited only to those high level discretionary acts exercised at a truly executive level." *Bender v. City of Seattle*, 99 Wash.2d 582, 664 P.2d 492, 497 (1983). Colorado courts have established a similarly narrow definition of discretionary acts. "In this limited sense, discretionary acts are those which are of a judgmental, planning, or policy nature." *Cooper v. Hollis*, 42 Colo.App. 505, 600 P.2d 109, 111 (1979).

Viewed in light of these limitations, none of the decisions made by Sergeant Wilson were of an executive, policy nature. Sergeant Wilson participated in deciding where to establish the roadblock, and neglected to warn Bassett and Coziah that a dangerous high-speed pursuit was approaching. While these decisions involve the exercise of discretion, they do not involve planning or policy formation, and thus, are operational decisions. As was aptly noted by the Washington Supreme Court: " 'If this type of [operational] conduct were immune from liability, the exception would surely engulf the rule, if not totally

destroy it.'" *DeWald,* 719 P.2d at 648 (*quoting Mason v. Bitton,* 85 Wash.2d 321, 534 P.2d 1360, 1365 (1975)). Thus, the district court's denial of the State's motion for judgment as a matter of law was proper.

The exclusion of Ortega from the verdict form frustrates the legislature's expressed intent, and the defendants were entitled to have the causation rule of *DeWald* given as an instruction to the jury. We reverse and remand for a new trial.