# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 40

APRIL TERM, A.D. 2026

April 9, 2026

CHARLES BUNNING,

Appellant
(Plaintiff),

v.

S-25-0177

ERNEST ROMERO,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

*Representing Appellant:*
Bernard Q. Phelan, Phelan Law Offices, Cheyenne, Wyoming. Argument by Mr. Phelan.

*Representing Appellee:*
Kevin P. Bell, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming. Argument by Mr. Bell.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL, Justice.**

[¶1]  After Charles Bunning collided with Ernest Romero's vehicle in a highway intersection, Mr. Bunning sued Mr. Romero for negligently failing to yield the right of way to him.  After a bench trial, the district court concluded both Mr. Bunning and Mr. Romero had duties to one another to act as reasonable operators of motor vehicles on a public highway.  Finding they each breached those duties, proximately causing Mr. Bunning's injuries and proven damages, the district court concluded Mr. Bunning was barred from recovering any damages because it found him to be more than fifty percent at fault under Wyoming's comparative fault statute, Wyo. Stat. Ann. § 1-1-109(b).  Mr. Bunning appeals arguing the district court erred in applying the contributory fault statute to his case.  We affirm.

## ISSUE

[¶2]  We rephrase the dispositive issue as:

> Did the district court err when it concluded Mr. Bunning was barred from recovering any damages under Wyoming's comparative fault statute?[1]

## FACTS

[¶3]  After Mr. Bunning got off work on November 1, 2017, he drove his Toyota Celica south on U.S. Route 85 (US 85) in Cheyenne, Wyoming.  US 85 is a four-lane highway, with two lanes going south, and two lanes going north.  US 85 is legally defined as a "through highway," on which vehicular traffic is given preferential right of way.[2]  Traffic was busy at that time due to people just getting off work.

[¶4]  As Mr. Bunning was traveling south on US 85, he was observed "weaving in and out" of traffic, passing vehicles that were going slower.  A driver of a vehicle Mr. Bunning passed,  Richard Ojeda, described Mr. Bunning as driving "excessively fast" and was surprised how fast Mr. Bunning was traveling.  Mr. Ojeda described Mr. Bunning's driving as "careless."  Given his speed of forty miles an hour, Mr. Ojeda estimated Mr. Bunning as going at least sixty miles per hour.  The posted speed limit in the area Mr. Bunning was traveling as he approached the intersection of US 85 and Country West Road was fifty miles per hour.

---

[1] Mr. Bunning also raised the issue of whether there was sufficient evidence of his loss-of-use of his vehicle to justify an award of damages.  Because we find his first issue to be dispositive, we will not address his second issue.

[2] *See* Wyo. Stat. Ann. § 31-5-102(a)(li) (LexisNexis 2025).

[¶5]    While Mr. Bunning was traveling south on US 85, Mr. Romero, driving a Toyota Tacoma pickup truck, and his passenger, Michael Zamora, were traveling east on Country Road West, which intersects US 85 at a stop sign.  Mr. Romero fully stopped at the stop sign at the intersection and waited for an opportunity to enter the intersection to cross the southbound lanes of US 85 and turn left to go north on US 85.  The driver of the vehicle behind Mr. Romero, Luis Andazola, testified Mr. Romero did indeed fully stop at the stop sign.  Mr. Romero saw a vehicle in the right, southbound lane, but did not see any vehicle in the left, southbound lane.  Therefore, he believed he had plenty of room to safely enter the intersection and turn left before the vehicle in the right southbound lane reached him.

[¶6]    At the same time, unbeknownst to Mr. Romero, Mr. Bunning, who was in the right lane two vehicles behind the front vehicle Mr. Romero was watching, switched lanes to the left lane to pass the vehicle directly in front of him.  Mr. Bunning accelerated past the first car and was also going to pass the front car and then switch back to the right lane.  While Mr. Bunning was performing this traffic maneuver, he saw Mr. Romero at the stop sign and was concerned Mr. Romero intended to enter the intersection.  Mr. Romero, who did not see Mr. Bunning switch to the left lane and accelerate past the two cars in the right lane, entered the intersection and began turning left into the inside northbound lane.  Mr. Bunning slammed on his brakes when he realized Mr. Romero had entered the intersection, but he still could not avoid directly crashing into Mr. Romeo's driver's side door.  Mr. Romero described Mr. Bunning as coming "out of nowhere" and colliding with his Tacoma.  Mr. Andazola also testified Mr. Bunning was going very fast, "came from nowhere" and hit Mr. Romero's Tacoma hard.

[¶7]    The impact of Mr. Bunning's smaller Celica colliding with Mr. Romero's larger Tacoma caused Mr. Romero's truck to spin 360 degrees multiple times across the northbound lanes of US 85 and come to rest in a parking lot on the east side of US 85.  Mr. Bunning's Celica came to rest off the highway, southwest of the intersection.  Mr. Bunning was knocked unconscious by the collision.  Mr. Bunning broke four toes on his right foot and hit the left side of his forehead during the collision, leaving a small abrasion.  Mr. Bunning was treated for his injuries at the hospital and released later in the evening.  Mr. Romero was also transported to the hospital where it was discovered he had broken his neck in the collision.

[¶8]    A Wyoming Highway Patrol Trooper investigated the collision and prepared a crash report.  The crash report was admitted into evidence as a trial exhibit without objection. The Trooper determined Mr. Bunning's hard braking at the time of the collision left 135 feet of skid marks.  The Trooper estimated Mr. Bunning's speed at sixty-five miles per hour, well over the posted speed limit of fifty miles per hour.  The report also indicated Mr. Romero failed to yield the right of way to Mr. Bunning.  Neither Mr. Bunning nor Mr. Romero were issued a citation.

2

[¶9]    Mr. Bunning filed a complaint against Mr. Romero alleging Mr. Romero's negligent driving caused the collision and requested monetary damages.  Mr. Romero filed a counterclaim against Mr. Bunning requesting damages from Mr. Bunting alleging it was Mr. Bunning's negligent operation of his Celica that caused the collision.[3]

[¶10]   The court held a one-day bench trial on the matter and, at the conclusion, invited the parties to submit proposed findings of fact and conclusions of law.  The district court considered the complaint, the answer and counterclaim, Mr. Bunning's reply to Mr. Romero's counterclaim, the evidence, the proposed findings and conclusions, and arguments presented at the bench trial and issued a decision order.  The decision order explained the court's findings and reasoning.  With regard to legal duty, the district court found:

> The evidence established both Mr. Bunning and Mr. Romero had duties to one another to act as reasonable operators of motor vehicles on a public highway.  They both also had duties to comply with all traffic laws while operating their vehicles.  Specifically, Mr. Bunning had a duty to not drive faster than the posted speed limit and to operate his vehicle under reasonable control.  Mr. Romero had a duty to yield the right of way to oncoming traffic on US 85.

The district court found both parties breached their duties.  The district court stated, "Mr. Bunning was speeding and was not operating his vehicle reasonably and prudently under the circumstances as he approached the intersection of US 85 and Country West Road."  The court also found Mr. Romero failed to yield the right of way and failed to ensure he could safely pass in front of Mr. Bunning's vehicle before crossing US 85.

[¶11]   The district court then concluded both Mr. Bunning's and Mr. Romero's negligence were proximate causes of Mr. Bunning's injuries and damages.  The district court reasoned Mr. Bunning's speed and unreasonable driving were contributing causes of the collision with Mr. Romero's truck and Mr. Bunning's injuries.  The district court also concluded Mr. Romero's failure to safely yield the right of way to Mr. Bunning was a contributing cause of the collision.

[¶12]   The district court further found the collision caused significant damage to Mr. Bunning's vehicle and caused Mr. Bunning's injured toes, resulting in Mr. Bunning being unable to work for four months.  The court found Mr. Bunning sustained damages in the amount of $23,180 for the value of his vehicle, lost wages, and pain and suffering.

---

[3] Mr. Romero's counterclaim was settled prior to trial.

[¶13] After making all these findings, the district court applied the comparative fault statute and concluded Mr. Bunning's comparative fault barred him from recovering damages. The court stated:

> The [c]ourt finds and concludes that Mr. Bunning was more than 50 percent at fault for the collision and his injuries. Mr. Bunning was driving 15 mph over the posted speed limit, and he was weaving in and out of traffic during a heavy traffic time as he approached the intersection. Both disinterested witnesses and the WHP trooper indicated he was speeding. Mr. Ojeda described Mr. Bunning's vehicle as weaving in and out of traffic. Both Mr. Romero and Mr. Andazola said Mr. Bunning's vehicle appeared to come out of nowhere. The resulting significant collision and skid marks supported that Mr. Bunning was driving at a high speed. Had Mr. Bunning been driving the speed limit and not weaving in and out of traffic as he approached the intersection, the collision may have been avoided and his injuries may have not been as severe. Although Mr. Bunning had the right of way, he was driving in a manner that was unreasonable and imprudent under the conditions. He did not have due regard to the actual and potential hazards then existing when he approached and crossed the intersection of US 85 and Country West Road. Mr. Bunning admitted he saw Mr. Romero's vehicle at the stop sign waiting to enter and cross southbound US 85, yet he chose to weave in and out of traffic and speed as he approached the intersection.
>
> Therefore, because Mr. Bunning's portion of fault is more than 50 percent, he is barred from recovering any damages. Wyo. Stat. Ann. 1-1-109(b).

The district court entered a judgment, which incorporated its decision order. This appeal followed.

**STANDARD OF REVIEW**

[¶14] Our standard of review following a bench trial is well-established:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that the evidence of

4

the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed de novo.

*Clark Tr. of Lenore H. Clark Living Tr. Dated Sept. 24, 1992 v. Fuller*, 2025 WY 92, ¶ 9, 574 P.3d 632, 636–37 (Wyo. 2025) (quoting *Leeks Canyon Ranch, LLC v. Jackson Hole Hereford Ranch, LLC*, 2025 WY 63, ¶ 31, 569 P.3d 1120, 1130 (Wyo. 2025)).

## DISCUSSION

[¶15]  Mr. Bunning argues the district court's application of Wyoming's comparative fault statute, Wyo. Stat. Ann. § 1-1-109 was erroneous and resulted in the improper forfeiture of his statutory preferential right of way. Mr. Bunning essentially argues a failure to yield the right of way at a stop sign in violation of Wyo. Stat. Ann. § 31-5-222(b) makes the violator strictly liable, thus making the through highway driver's speed and driving conduct irrelevant. In this regard, Mr. Bunning argues Mr. Romero's violation of § 31-5-222(b) absolved Mr. Bunning of any fault and the comparative fault statutes should not bar him from recovery. Mr. Bunning's argument requires us to first consider two relevant statutes—Wyo. Stat. Ann. § 1-1-109 and § 31-5-222.

[¶16]  The Wyoming Legislature adopted the comparative fault statute to ameliorate the harsh effects of contributory negligence, while still allowing the defendant, as an affirmative defense, to present evidence of a plaintiff's negligence to reduce damages. *Schneider Nat., Inc. v. Holland Hitch Co.*, 843 P.2d 561, 567 (Wyo. 1992) (citations omitted); *Parrish v. Groathouse Const., Inc.*, 2006 WY 33, ¶ 9, 130 P.3d 502, 505 (Wyo. 2006) (citation omitted); *Eiselein v. K-Mart, Inc.*, 868 P.2d 893, 895–96 (Wyo. 1994); *see also Bd. of Cnty. Comm'rs of Teton Cnty. ex rel. Teton Cnty. Sheriff's Dep't v. Bassett*, 8 P.3d 1079, 1083 (Wyo. 2000). The comparative fault statute instituted a fair system of apportionment of damages in all negligence actions. *See Eiselein*, 868 P.2d at 896 (citing 1973 Wyo.Sess.Laws, ch. 28). Wyoming Statute § 1-1-109 codifies Wyoming's comparative fault law.

[¶17]  Subsection (b) describes the general premise of Wyoming's comparative fault law and provides:

> (b) Contributory fault shall not bar a recovery in an action by any claimant or the claimant's legal representative to recover damages for wrongful death or injury to person or property, if the contributory fault of the claimant is not more than fifty percent (50%) of the total fault of all actors. Any damages allowed shall be diminished in proportion to the amount of fault attributed to the claimant.

5

Wyo. Stat. Ann. § 1-1-109(b). Under this subsection, a plaintiff, even if at fault to some degree for the injury for which he's seeking to recover damages, may still recover those damages if his contributory fault is not more than fifty percent of the total fault of all actors. Wyo. Stat. Ann. § 1-1-109(b); *see also Schneider Nat., Inc.*, 843 P.2d at 569. However, a plaintiff is barred—prohibited or prevented—from recovery if his contributory fault is more than fifty percent of the total fault of all actors. *See Parrish*, ¶ 13, 130 P.3d at 506 ("[a]s long as Mr. Parrish's fault remains greater than fifty percent, he is not entitled to recovery under Wyoming's comparative fault statute.").

[¶18] In addition to describing how comparative fault works in Wyoming, § 1-1-109(b) makes clear that comparative fault may be raised in all—not some—civil actions by plaintiffs seeking to "recover damages for wrongful death or injury to person or property." Wyo. Stat. Ann. § 1-1-109(b); *see also Eiselein*, 868 P.2d at 899 (Macy, C.J., specially concurring) ("[t]he language of the statute clearly indicates that comparative negligence applies to all actions in negligence"). As we noted in *Strong Const., Inc. v. City of Torrington*, "[t]he comparative fault statute applies to tort claims where a party seeks personal injury or property damages caused by the fault of another." *Strong Const., Inc. v. City of Torrington*, 2011 WY 82, ¶ 26, 255 P.3d 903, 913 (Wyo. 2011). Our case law further acknowledges the intent of the statute was to apportion fault in all negligence actions. *See Schneider Nat., Inc.*, 843 P.2d at 578 (acknowledging "legislature's desire to apportion damages for negligence actions"); *Phillips v. Duro-Last Roofing, Inc.*, 806 P.2d 834, 836–37 (Wyo. 1991) (describing § 1-1-109 as "the allocation and apportionment statute" for negligence actions); *Kirby Bldg. Sys. v. Min. Expls. Co.*, 704 P.2d 1266, 1278–81 (Wyo. 1985); *Sherman v. Platte Cnty.*, 642 P.2d 787, 790 (Wyo. 1982) ("In a negligence action, the [trier of fact] is now called upon to ascertain the fact of negligence, if any, on the part of each of the parties, and then to apportion such negligence between them.").

[¶19] The definitions provided in § 1-1-109 confirm the statute's broad reach. The statute specifies "fault" includes "acts or omissions, determined to be a proximate cause of death or injury to person or property, **that are in any measure negligent**, or that subject an actor to strict tort or strict products liability . . ." Wyo. Stat. Ann. § 1-1-109(a)(iv) (emphasis added). The plain language of § 1-1-109(c), (d), and (e) further shows the legislature's intent that § 1-1-109 applies to all negligence actions as it requires the trier of fact to compare the fault of all actors, the claimant, and defendant(s). We have previously explained that subsections (c), (d), and (e) stand alone when the claimant is free of fault and subsection (b) applies only if the claimant can be found to be contributorily negligent. *Anderson Highway Signs & Supply, Inc. v. Close*, 6 P.3d 123, 126-128 (Wyo. 2000) (discussing the 1986 statute subsections (b), (c), and (d) which correspond to the 1994 statute subsections (c), (d), and (e), and 1986's subsection (a) which became 1994's (b)). Considering these statutory provisions together, Wyoming's comparative fault system comes together to allocate fault in all negligence actions.

6

[¶20]   While Mr. Bunning asserts the district court erred in comparing fault in his case, the plain language of the statute and the nature of his action demonstrate otherwise. Mr. Bunning's complaint filed against Mr. Romero was titled "Complaint For Monetary Damages," and alleged Mr. Romero's driving was negligent and caused injury to his person and damage to his property—his Celica—as well as other damages included in the definition of "injury to person or property" under § 1-1-109(a)(v). Thus, Mr. Bunning's civil action, a negligence action, against Mr. Romero was an action to recover damages for that alleged injury to his person and his property, placing it squarely withing the parameters of § 1-1-109.

[¶21]   Accordingly, § 1-1-109 applies to Mr. Bunning's civil negligence action against Mr. Romero, unless the legislature, limited, or even rejected altogether, the application of comparative negligence in negligence actions arising out of particular circumstances. *See Greenwalt v. Ram Rest. Corp. of Wyoming*, 2003 WY 77, ¶ 53, 71 P.3d 717, 735 (Wyo. 2003) (citation omitted); and *Huff v. Shumate*, 360 F. Supp. 2d 1197, 1212–13 (D. Wyo. 2004). Mr. Bunning argues he had an absolute, unconditional right to the right of way on US 85 under Wyo. Stat. Ann. § 31-5-222, making his own driving conduct irrelevant. Therefore, we must also examine § 31-5-222 to determine whether it contains plain, clear language precluding application of § 1-1-109 to civil negligence cases arising out of collisions involving a violation of § 31-5-222(b).

[¶22]   Wyoming statute § 31-5-222 provides that a preferential right of way may be established by stop or yield signs. Wyo. Stat. Ann. § 31-5-222(a). Subsection (b) provides:

> (b) Except when directed to proceed by a police officer, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when the driver is moving across or within the intersection or junction of roadways. The driver shall yield the right-of-way to pedestrians within an adjacent crosswalk.

Wyo. Stat. Ann. § 31-5-222(b).[4]

[¶23]   Section 31-5-222 includes no language precluding the application of comparative fault principles to negligence actions arising out of vehicle accidents involving a violation of the statute. For Mr. Bunning's assertion to be correct, we would have to read additional language into § 31-5-222 which would be impermissible. *Castaner v. State*, 2026 WY 25,

---

[4] Subsection (c) provides for conduct at yield signs, which are not at issue in this case.

¶ 19, 584 P.3d 454, 462–463 (Wyo. 2026). We consider the omission of words from a statute an intentional act by the Legislature, and we will not read words into a statute when the Legislature has not included them. *Matter of Est. of Haack*, 2026 WY 17, ¶ 16, 583 P.3d 690, 695 (Wyo. 2026) (citing *Alvarado v. State*, 2024 WY 9, ¶ 4, 541 P.3d 1097, 1099 (Wyo. 2024)). We are without authority to modify § 31-5-222 by writing into it language providing that violators may not assert comparative fault. *See Johnson v. Safeway Stores, Inc.*, 568 P.2d 908, 913 (Wyo. 1977) (citation omitted).

[¶24] The explanation in *Huff v. Shumate*, 360 F. Supp. 2d 1197 (D. Wyo. 2004) is instructive and helpful on this point. In *Huff*, the United States District Court for the District of Wyoming, in addressing the constitutionality of Wyoming Statute § 31-5-1402(f), had to harmonize two Wyoming statutes, § 1-1-109, and § 31-5-1402(f) regarding seat belt usage. Wyoming statute § 31-5-1402(f) provides, "[e]vidence of a person's failure to wear a safety belt as required by this act shall not be admissible in any civil action." *Huff*, 360 F. Supp. 2d at 1205 (quoting Wyo. Stat. Ann. § 31-5-1402(f) (LexisNexis 2003)).

[¶25] The court looked to *Greenwalt* and stated, "[w]hile it is true that the legislature in [§ 1–1–109] generally espoused the comparative negligence approach for negligence actions, this is not to say that the legislature is precluded from subsequently limiting, or even rejecting altogether, the application of comparative negligence in negligence actions arising out of particular circumstances." *Id.* 360 F. Supp. 2d at 1212–1213 (citing *Greenwalt*, ¶ 53, 71 P.3d at 735). The court further reasoned, the Wyoming legislature has done so in § 1402(f). *Id.* The court explained, "the legislature has limited the application of comparative fault principles to negligence actions arising out of automobile accidents involving unbelted occupants. This it has a right to do." *Id.* Additionally, in footnote 15, the court noted:

> The enactment of § 1402(f) is not the first time the legislature has undertaken to modify the reach of § 1–1–109. In addition to the Dram Shop statute, Wyo. Stat. Ann. § 12–8–301 (LexisNexis 2003), discussed at length in *Greenwalt*, the legislature has enacted the Wyoming Recreation Safety Act, Wyo. Stat. Ann. §§ 1–1–121 to 1–1–123 (LexisNexis 2003), which limits the application of comparative negligence by limiting the duty which a provider owes to a participant. *See also Halpern v. Wheeldon*, 890 P.2d 562 (Wyo.1995).

*Id.* at 1213, n.15.

[¶26] As the court correctly reasons in *Huff*, the Wyoming Legislature knows how to limit or preclude the reach and application of § 1-1-109, having expressly done so at least three times: the Dram Shop Act (§ 12-8-301(a)), the Wyoming Recreational Safety Act (§ 1-1-123(a)–(c)), and the usage of safety belt statute (§ 31-5-1402(f)). If the Wyoming Legislature intended to preclude the application of § 1-1-109 to violations of § 31-5-222,

8

it would have expressly included plain clear language to that effect. It did not. Thus, § 1-1-109 applies to Mr. Bunning's case.

[¶27] Finding the comparative fault statute applies to this case, we must now consider the district court's application of the statute. Section 1-1-109(c)(ii) requires the district court to "make special findings of fact, determining the total amount of damages sustained by the claimant without regard to the percentage of fault attributed to the claimant, and the percentage of fault attributable to each actor." The district court did so, and viewing the evidence as true and in a light most favorable to Mr. Romero and giving him all reasonable inferences that may be drawn from it, we conclude the district court's findings of fact and conclusions of law were not clearly erroneous. The record supports the district court's findings and conclusions of law that Mr. Bunning was more than fifty percent at fault for the collision and his injuries, and that Wyoming Statute § 1-1-109(b) barred him from recovering any damages.

[¶28] Specifically, the record supports the court's overall findings of fact. As detailed in the fact section above, the parties presented evidence Mr. Bunning was speeding and weaving in and out of traffic during a busy traffic time. The parties also presented evidence Mr. Romero failed to yield to the right of way.

[¶29] The district court also identified the duty owed by each driver. We cannot find its assessment was in error. We have consistently held all vehicle operators have a duty to use ordinary care and a duty to maintain a proper lookout when driving. *See, e.g.*, *Lovato v. Tim Case*, 2022 WY 151, ¶ 14, 520 P.3d 1144, 1149 (Wyo. 2022); *Jones v. Schabron*, 2005 WY 65, ¶ 13, 113 P.3d 34, 38 (Wyo. 2005); *Downtown Auto Parts, Inc. v. Toner*, 2004 WY 67, ¶ 6, 91 P.3d 917, 919 (Wyo. 2004); *DeJulio v. Foster*, 715 P.2d 182, 186 (Wyo. 1986); *Cervelli v. Graves*, 661 P.2d 1032, 1038 (Wyo. 1983); *Miller v. Hedderman*, 464 P.2d 544 (Wyo. 1970). This includes preferred drivers under § 31-5-222(b) like Mr. Bunning. "The rights of persons on the streets are relative, and though one is given the right of way by the law aforesaid, it remains his duty to exercise reasonable care to avoid collisions with other vehicles." *Christensen v. McCann*, 282 P. 1061, 1063 (1929) (quoting *Garner v. Brown*, 223 P. 217, 218 (Wyo. 1924)). "Speed, control, and the duty to maintain an adequate lookout are interrelated. As speed increases, the duty to be alert and have one's automobile under adequate control increases." *Anderson v. Schulz*, 527 P.2d 151, 153 (Wyo. 1974) (citation omitted).

[¶30] The district court next found each driver breached their respective duties and both were the proximate cause of Mr. Bunning's damages. The record also supports this finding. Mr. Bunning was speeding and not operating his vehicle reasonably and prudently under the circumstances. Mr. Romero failed to yield the right of way. The district court was correct to find each driver's actions were a contributing cause of the accident.

9

[¶31]   It is well established there can be more than one proximate cause.  *See JTL Grp., Inc. v. Gray-Dockham*, 2022 WY 67, ¶ 39, 510 P.3d 1060, 1070–71 (Wyo. 2022) (quoting *Wood v. CRST Expedited, Inc.*, 2018 WY 62, ¶ 9, 419 P.3d 503, 506–07 (Wyo. 2018)); *Natural Gas Processing Co. v. Hull*, 886 P.2d 1181, 1186 (Wyo. 1994); *Frazier v. Pokorny*, 349 P.2d 324, 330–31 (Wyo. 1960); and *Hester v. Coliseum Motor Co.*, 285 P. 781, 783 (1930).  In *Pierce v. Bean*, 115 P.2d 660 (Wyo. 1941), this Court held the trial judge was justified in deciding a proximate cause of the collision was plaintiff's negligence in driving at a speed that was not reasonable and proper under the conditions.  *Id.* at 661.  We explained the trial court did not err when it found the defendant was negligent in failing to see the plaintiff's truck and that the "plaintiff also was negligent in failing to operate his truck at a speed that was reasonable and proper having due regard for other traffic and the intended use and condition of the road; and plaintiff's failure to drive with due care would not be excused on the ground that he had the right of way."  *Id.* (citation modified).

[¶32]   This Court's reasoning in *McVicker v. Kuronen*, 256 P.2d 111 (Wyo. 1953) further supports the reasonableness of the district court's finding.  In *McVicker*, we stated:

> That our laws prescribe the respective duties of drivers of vehicles on meeting and passing—thus defining in a fashion the rule of the road, or, as is sometimes said, granting the right of way,—does not relieve a driver of the duty to exercise reasonable care to avoid collision with other vehicles.

*Id.* at 116.  We also endorsed the Iowa court's statement in the *Langner v. Caviness,* 28 N.W.2d 421, 424 (Iowa 1947) that "[a]ll motorists are under a two-fold duty: to comply with applicable traffic regulations and to exercise the care of the ordinarily prudent person under the circumstances.  The requisite degree of care in the performance of the second duty is measured by the care ordinarily exercised under such conditions."  *Id.* at 116.  Our language in *McVicker* embodies the interrelationship between § 31-5-222(b)'s preferential right of way and the preferred driver's duty to still exercise reasonable care under the circumstances to avoid collision with other drivers.  Thus, Mr. Bunning owed a duty to drive with reasonable care just as Mr. Romero owed a duty to drive with reasonable care and both breached those duties causing the accident and Mr. Bunning's damages.

[¶33]   Finally, the district court found the damages and apportioned the fault to each actor.  The record supports the damages found by the district court.[5]  The district court's apportionment of more than fifty percent of the fault to Mr. Bunning is also not clearly erroneous.  Mr. Bunning was speeding, weaving in and out of traffic during a busy traffic time, and admitted he saw Mr. Romero at the intersection and worried he might pull into the intersection but seemingly did nothing to alter his driving.  Multiple witnesses noted it seemed as if Mr. Bunning came out of nowhere.  Mr. Romero also failed to yield to the

---

[5] Given the district court's apportionment of fault, we do not further detail the damages or the evidence of the record on damages.

right of way, but testimony showed he came to a full stop and otherwise seemed to be driving reasonably.

[¶34]   In *Ries v. Cheyenne Cab & Transfer Co.*, 79 P.2d 468 (Wyo. 1938), Justice Riner, in discussing a city ordinance giving preferential right of way to the right in an intersection, stated, "[t]he driver of the car not entitled to priority may correctly assume that the other will obey the ordinance as to speed and will not approach at an illegal or excessive speed," and the "plaintiff might reasonably have presumed that any vehicle approaching the intersection from the south would not exceed the speed limits fixed by the city ordinance and that [plaintiff] would be able to cross the intersection before any car from that direction reached it." *Id.* at 472–73; *Elite Cleaners & Tailors, Inc. v. Gentry*, 510 P.2d 784, 790 (Wyo. 1973); s*ee also Robinson v. Shoumaker*, 418 P.2d 789, 792 (Wyo. 1966) (explaining when a defendant exercises proper care before entering an intersection, a plaintiff with the right of way is "not excused from exercising ordinary care and thereby imperiling others who were proceeding with caution.")   This reasoning shows that factors other than who has the right of way may bear on the analysis of the contributing causes of the accident.  In this case, the district court found they did.  Although the district court may have also apportioned fault otherwise, it was the district court's duty to apportion the fault, and we are not left with the definite and firm conviction that the district court made a mistake in its apportionment.

[¶35]   Lastly, within his argument, Mr. Bunning argues comparing his driving conduct to Mr. Romero's violation of § 31-5-222(b) amounts to a forfeiture of his right to the statutory right of way on a through highway.  Mr. Bunning cites no Wyoming law for his argument, relying instead on law from other jurisdictions.  We find his argument unavailing.  Mr. Bunning's right to the right of way on US 85, a through highway, was not forfeited.  The district court found and concluded Mr. Bunning had the right to the right of way and Mr. Romero violated § 31-5-222(b) in failing to yield that right to Mr. Bunning.  The court also found Mr. Romero's violation was a co-proximate cause of the collision and Mr. Bunning's injuries.  Thus, Mr. Bunning's right was not forfeited.  Instead, the court additionally found and concluded Mr. Bunning's driving conduct also proximately caused the collision and Mr. Bunning's injuries and Mr. Bunning bore more than fifty percent of the fault.  It was Mr. Bunning's more than fifty percent fault that precluded recovery, not a forfeiture of his right of way.

## CONCLUSION

[¶36]   We affirm. The district court's conclusion Mr. Bunning was barred under Wyoming Statute § 1-1-109(b) from recovering any damages because it found him to be more than fifty percent at fault for the collision and his injuries was not clearly erroneous.