Ronald D. HUFF, Individually and as Personal Representative for the Estate of Patricia Huff, Deceased, Plaintiff,

v.

Patricia E. SHUMATE, Defendant.

No. 02–CV–1047–D.

United States District Court, D. Wyoming.

Sept. 30, 2004.

Peter J Young, Rick L Koehmstedt, Schwartz Bon Walker & Studer, Casper, WY, for Plaintiff.

Hampton K O'Neill, Timothy Michael Stubson, Brown Drew & Massey, Casper, WY, Melinda D Godwin, Rothgerber Johnson & Lyons, Thomas G Gorman, Thomas A Nicholas, III, Hirst & Applegate, Cheyenne, WY, for Defendant.

Jessica Rutzick, Rutzick Law Office, Jackson, WY, for Amicus.

David Delicath, Wyoming Attorney General, Cheyenne, WY, for Intervenor.

### ORDER ON PLAINTIFF'S MOTION IN LIMINE CONCERNING SEAT BELT USAGE

DOWNES, District Judge.

This matter comes before the Court on Plaintiff's motion in limine concerning the admissibility of evidence of seat belt usage. The Court has extensively reviewed all the materials submitted in support of and in opposition to the issue contained in this motion, including the briefs submitted by the parties, the State of Wyoming, and the Wyoming Trial Lawyers Association regarding the constitutionality of Wyo. Stat. Ann. § 31–5–1402(f). Having done so, and being otherwise fully advised, the Court FINDS and ORDERS as follows:

At the heart of this motion in limine and the ensuing motion to certify is whether this Court should apply a Wyo-

ming statute prohibiting the introduction of evidence of seat belt nonuse in the above-captioned matter.[1] The jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1332. Following the Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, district courts of the United States sitting in diversity follow a theoretically simple principle: federal courts are to apply state substantive law and federal procedural law. *See Id.* at 78, 58 S.Ct. 817; *Id.* at 92, 58 S.Ct. 817 (Reed, J., concurring); *Hanna v. Plumer*, 380 U.S. 460, 471–74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Though the common name for the doctrine under which courts sitting in diversity choose between federal rules of decision and state law is the *Erie* doctrine, to consider this doctrine to inform all such choices is misleading. John Hart Ely, *The Irrepressible Myth of Erie*, 87 HARV. L. REV. 693, 693–98 (1974). At least three different basic texts, each of which contains a different standard, ultimately govern such choices: (1) the Constitution of the United States; (2) the Rules Enabling Act of 1934, 28 U.S.C. § 2072; and (3) the Rules of Decision Act of 1789, 28 U.S.C. § 1652.

 Though the Constitution is always in the background in diversity cases, it only directly applies to the displacement

1. At the outset, the Court notes that numerous federal courts around the country have addressed this issue. Regardless of whether the courts ultimately determined evidence of seat belt nonuse to be admissible in the various actions before them, all of them have found the state statutes in question to be substantive in nature for purposes significant to the case at bar. The means applied to reach their conclusions, though, are all over the map. *See e.g.*, *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195 (7th Cir.1992) (applying Wellborn test to conclude state statute is substantive law); *Gardner v. Chrysler Corp.*, 89 F.3d 729 (10th Cir.1996) (citing *Barron* and applying Wellborn test with little rationale to reach same result); *Hermann v. General Motors Corp.*, 720 F.2d 414 (5th Cir.1983) (stating only that court was *"Erie*-bound" to apply Louisiana case law regarding the admissibility of evidence of plaintiff's seat belt nonuse); *Carrasquilla v. Mazda Motor Corp.*, 197 F.Supp.2d 169 (M.D.Pa.2002) (applying state law (without analysis) apparently under assumption that law is substantive); *Milbrand v. DaimlerChrysler Corp.*, 105 F.Supp.2d 601 (E.D.Tex.2000) (applying outcome determinative test); *Strout v. Paisley*, 2000 WL 1900313 (D.Me.2000) (citing *Barron* and applying Wellborn test); *Brown v. Ford Motor Co.*, 67 F.Supp.2d 581 (E.D.Va.1999) (holding after significant analysis that insofar as state statute prohibits introduction of evidence of seat belt nonuse to prove contributory negligence or mitigation of damages, statute is substantive; however, in all other respects, statute's prohibition of introduction of such evidence is procedural and of no effect in diversity case); *Freeman v. Case Corp.*, 924 F.Supp. 1456 (W.D.Va.1996), *rev'd on other grounds*, 118 F.3d 1011 (4th Cir.1997) (applying without analysis state statute prohibiting evidence of seat belt nonuse); *Diehl v. Ogorewac*, 836 F.Supp. 88 (E.D.N.Y.1993) (implicit in application of state statutory and decisional law in decision to permit introduction of evidence of seat belt nonuse is court's determination that state law is substantive); *MacDonald v. General Motors Corp.*, 784 F.Supp. 486 (E.D.Tenn. 1992) ("Despite this Court's view that the admissibility of evidence regarding seat belt usage is a procedural matter not affected by *Erie*, the Sixth Circuit appears to have perceived it as a matter of substantive law." Accordingly, court looked to state statute and analogous state court decisions in effort to apply state law as substantive); *Forsberg v. Volkswagen of America, Inc.*, 769 F.Supp. 33 (D.N.H.1990) (refusal to admit evidence of seat belt nonuse based on court's approximation of state law derived from looking to related pronouncements from state supreme court, state statutes, and trends in other jurisdictions); *Ramrattan v. Burger King Corp.*, 656 F.Supp. 522 (D.Md.1987) (refusing to admit evidence of seat belt nonuse based on deference to state court decisions holding that such evidence is irrelevant under doctrine of avoidable consequences). As will be seen, this Court falls in line with those courts applying the Wellborn test.

of state law by a federal rule of decision when the federal rule is an act of Congress. Ely, *supra* at 700–06. Any act of Congress purporting to prescribe procedure for the federal judiciary in diversity cases is a valid exercise of Congress' power to do so as long as it is rational to treat the subject matter as procedure, and so long as the procedural rule does not offend some other limitation on Congress' powers. *Wayman v. Southard,* 10 Wheat. 1, 23 U.S. 1, 42–43, 6 L.Ed. 253 (1825); *Hanna,* 380 U.S. at 471–72, 85 S.Ct. 1136. *See also* Olin Guy Wellborn, III, *The Federal Rules of Evidence and the Application of State Law in Federal Courts,* 55 Tex. L. Rev. 371, 398 (1977).

■■■ The Rules Enabling Act applies to all rules of decision promulgated thereunder, such as the Federal Rules of Civil Procedure. The Act provides in pertinent part:

(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts ... and courts of appeals.

(b) Such rules shall not abridge, enlarge or modify any substantive right.

28 U.S.C. § 2072. In cases involving a choice between the Rules of Civil Procedure and a state law, the Rules Enabling Act and cases construing it constitute the relevant standard. *See e.g., Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941). Under the Rules Enabling Act, a federal rule of decision is valid if it "really regulates procedure", *Sibbach,* 312 U.S. at 14, 61 S.Ct. 422, and does not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. Unlike the constitutional analysis, a rule promulgated under the Rules Enabling Act may be invalid even if it does regulate procedure, if it also oper-

ates to affect a substantive right. Wellborn, *supra,* at 399.

■■■ The Rules of Decision Act applies when the federal rule of decision competing with a state law is wholly judgemade. The Act provides in relevant part:

The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

28 U.S.C. § 1652. Choices between state law and federal judge-made law are governed by the Rules of Decision Act and cases construing it. *See e.g., Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Unlike constitutional and Rules of Enabling Act analyses, Rules of Decision Act analysis does not resort to notions of substance and procedure at all. This is because the purposes of the Rules of Decision Act, as interpreted by the Supreme Court, are not only to prevent the frustration of state substantive policy, but also to ensure the outcome of litigation in the forum will not materially differ when it takes place in federal rather than state court. *Hanna,* 380 U.S. at 465–66, 468, 85 S.Ct. 1136; *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). *See also* Wellborn, *supra,* at 399. Accordingly, the Rules of Decision Act applies only to situations where state law must apply because the federal court is without authority to make law. Of significance is the fact that a federal rule cannot be invalid under the Rules Enabling Act for modifying a state-created substantive right unless the state right would otherwise be applicable to the litigation under the Rules of Decision Act. Wellborn, *supra,* at 400.

■■■ With these concepts in mind, the Court now turns its attention to the

Federal Rules of Evidence and their proper place within this framework. The Rules of Evidence were enacted directly by Congress. Act of Jan. 2, 1975, Pub. L. No. 93–595, 88 Stat. 1926. As such, their validity is assessed solely through application of the constitutional analysis described above. The consequence is surprising. Since the Rules of Decision Act is not applicable, a Rule of Evidence is not invalid even though its application in a diversity action would frustrate the judicially-interpreted twin aims of that Act. Moreover, since the Rules Enabling Act is not applicable, a Rule of Evidence is not invalid even though it may abridge, enlarge or modify a state-created substantive right. Under a constitutional analysis, that the Rules of Evidence are rationally classifiable as rules of procedure suffices to sustain their validity. Wellborn, *supra*, at 400. *See also* 22 Wright & Graham, Federal Practice and Procedure: Evidence § 5201 (characterizing the Federal Rules of Evidence as procedural).

 Nevertheless, despite the federal courts' seemingly limitless authority to apply the Rules of Evidence regardless of the consequences, courts should take care not to apply them in a manner that would produce such drastic results. Moreover, such indiscriminate application would be inconsistent with the congressional intent behind the enactment of the Rules. Congress' intent in passing the Rules of Evidence was to avoid to the extent reasonably possible tampering with state substantive rights and policies.[2] For instance, Congress intervened and postponed the effective date of the Rules of Evidence in part because in its view,

state rules that ought to have been considered "substantive" were overridden by the Supreme Court's version of the Rules. Act of Mar. 30, 1973, Pub. L. No. 93–12, 87 Stat. 9 (suspending the effective date of the Rules in order to review them in detail). Specifically, Congress changed the Rules to effect conformity with state law on those aspects of the Court's version—the privilege rules—that were most vulnerable to challenges under subsection (b) of the Rules Enabling Act. *Hearings on Proposed Rules of Evidence Before the Special Subcomm. on Reform of Federal Criminal Laws of the House Comm. on the Judiciary*, 93d Cong., 1st Sess., ser. 2, at 142, 154–58, 171–73, 246, 331, 495 (1973); S. REP. No. 1277, 93d Cong., 2d Sess. 6–7, 11 (1974); H.R. REP. No. 650, 93d Cong., 1st Sess. 2, 9, 18 (1973). The major changes fashioned by Congress in the "privileges" area included the substitution of Rule 501 for the specific privilege rules of the Court's draft. Congress also made similar changes to Rule 601 on the competency of witnesses so as not to abrogate any state policy. Congress' actions from 1973 to 1975 in relation to the enactment of the Rules of Evidence closely resemble Congress' concerns for the preservation of substantive rights in 1934, as gleaned from the language of the Rules Enabling Act. Thus, to borrow from Wellborn, "while the 'arguably procedural' test of the Constitution is the only operative check on the validity of the [Federal Rules of Evidence]," Wellborn, *supra*, at 402, "to rely on the modesty of the constitutional limitation on congressional ac-

2. Having said this, the Court is cognizant, however, that "[t]he rules need not be construed to promote maximum conformity with state evidence law; clearly the enactment of any set of uniform federal evidence rules would lead to some differences in outcome from state courts." Olin Guy Wellborn, III,

*The Federal Rules of Evidence and the Application of State Law in Federal Courts*, 55 TEX. L. REV. 371, 402 (1977). In fact, "the very idea of the diversity jurisdiction was to provide an alternative to state court." John Hart Ely, *The Irrepressible Myth of Erie*, 87 HARV. L. REV. 693, 710 (1974).

tion to extend a rule in derogation of state law would turn on its head the significance of Congress' role in intervening in the promulgation of the Rules." *Id.* at 406. At the very least then, the Rules Enabling Act's prohibition against modifying substantive law ought to inform construction of the Rules of Evidence in diversity cases.

To avail itself of the Rules Enabling Act analysis in its efforts to apply the Rules of Evidence, the Court must first distinguish between substantive and procedural law. Doing so will also enable the Court to carry out its obligation under *Erie* to apply the substantive law of the forum state and the procedural law of the federal system. Distinguishing between substance and procedure is not an easy task, especially when a substantive law is couched in evidentiary terms. In making this distinction, the Court resorts to scholars who addressed this topic during the era when the Rules of Evidence were drafted by the Supreme Court and enacted by Congress.

One such notable scholar, Professor John Hart Ely, posits that a procedural rule is "one designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes." Ely, *supra,* at 724. By this definition, a Rule of Evidence applied under a Rules Enabling Act theory would override a state law that has only procedural purposes, but could not supplant a state law that, in addition to its procedural purpose, grants rights "for one or more nonprocedural reasons, for some purpose or purposes not having to do with the fairness or efficiency of the litigation process." *Id.* at 725. To Ely, then, a substantive law is one which grants rights for one or more nonprocedural reasons.

In assessing Ely's test for a substantive law, Professor Olin Wellborn, III, concludes that it is underinclusive. One thing both commentators agree upon, however, is that the "primary activity" test em-

ployed by Justice Harlan in his concurring opinion in *Hanna v. Plumer,* 380 U.S. 460, 475, 477, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (Harlan, J., concurring), is inadequate to define substantive laws. The "primary activity" test characterizes substantive laws as those which characteristically and reasonably affect people's conduct at the stage of primary private activity. Ely suggests that the test would be more applicable if the term "conduct" were given a broader meaning, "to include along with the encouragement of actual activity the fostering and protection of certain states of mind." Ely, *supra,* at 726. By expanding the meaning of "conduct", Ely explains that the "primary activity" test would appropriately include laws "based upon a judgment that although the conduct involved is undesirable and indeed ought to be deterred, other and, in context, more important goals will be served by immunization from liability." *Id.*

Wellborn suggests that Ely's proposed expansion of the term "conduct" is inappropriate, and that the "primary activity" test as stated above does not comprehend the substantive aspect of rules such as statutes of limitations and immunities, which normally are not intended to encourage conduct that is prima facie unlawful. Wellborn, *supra,* at 403. As a result, Wellborn concludes that for purposes of the Rules Enabling Act, a law is substantive: "(a) if it has a nonprocedural purpose, or (b) even if its purposes are entirely procedural, if it is calculated to affect behavior at the planning as distinguished from the disputative stage of activity." *Id.* at 404.

The troubling aspect of this definition is that it finds little support in the case law. That is not to say that the case law rejects this definition, but that the case law rarely seems to get past subsection (a) of the Rules Enabling Act. Most notably, the Su-

preme Court in *Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), upheld Rule of Civil Procedure 35 against an attack based on subsection (b) of the Rules Enabling Act. In upholding the Rule, however, the test the Court enunciated—"whether the rule really regulates procedure," *Id.* at 14, 61 S.Ct. 422—seems to look no further than subsection (a). While *Sibbach* cannot be ignored, it is important to remember that it dealt with a Rule of Civil Procedure. Whatever the reason for the *Sibbach* Court's decision not to address subsection (b) of the Act, it cannot be ignored that this subsection takes on a greater significance in the context of a court in diversity applying the Rules of Evidence, particularly Rules 401 and 402.

With this background in mind, the Court shifts its attention to the relationship between Rules of Evidence 401 and 402 and state law. To better understand this relationship, it is helpful first to discuss the meaning of "relevancy." The Federal Rules of Evidence "govern proceedings in the courts of the United States,"[3] FED. R. EVID. 101, their stated purpose being the "promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. To further this purpose, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." FED. R. EVID. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

The term "relevancy" consists of two aspects of the relation between an offer of evidence and the governing law. Often, this distinction is overlooked because "neither state legislatures nor state courts have felt the need to analyze the precise relationship of state substantive law and evidentiary rules. They are, for the state, part of the same ecology." Weinstein, *The Uniformity–Conformity Dilemma Facing Draftsmen of the Federal Rules of Evidence*, 69 COLUM. L. REV. 353, 364 (1969). Though perhaps this distinction is not often apprehended, "no correct and sure comprehension of the nature of any evidential question can ever be had unless this double or relative aspect of [relevance] is distinctly pictured." J. WIGMORE, EVIDENCE § 2, at 6 (3d ed.1940).

Without further belaboring the point, the two aspects of relevancy may be explained as follows: "Relevancy is the required relationship between evidence and propositions of substantive law. Consequently, every ruling on relevancy potentially contains two aspects or strands— a ruling about substantive law and a ruling about the required relationship." Wellborn, *supra,* at 374–75. The two-part relevancy test is borne out in the language of Rule 401. Decisions regarding which facts are "of consequence to the determination of the action" (*i.e.,* material facts) are made in diversity cases by resorting to propositions of state substantive law. Once the consequential facts are determined, whether offered evidence has "any tendency to make the existence of" a mate-

---

**3.** The Rules of Evidence do not apply to preliminary questions determined by the Court concerning the admissibility of evidence. *See* FED. R. EVID 104(a) and 1101(d)(1). The intent behind this rule is to empower the judge to hear any relevant evidence, such as affidavits or other reliable hearsay, in deciding questions that are factual in nature. FED. R. EVID. 104 advisory committee's note.

rial fact "more or less probable than it would be without the evidence" is left entirely to the Federal Rules of Evidence. So, when state substantive law dictates that a certain fact is not material to a claim or defense, evidence of that fact, though highly probative of its existence, is not relevant because the fact itself is immaterial. Thus, under Rule 402, the evidence would be excluded as immaterial and therefore irrelevant.[4]

Having established the relationship between Federal Rules of Evidence 401 and 402 and state law in a diversity action, the Court's next task is to determine whether § 31–5–1402(f) is substantive or procedural. If the law is procedural, then it has no application in this Court. If, on the other hand, it is a substantive law, then it will be applied according to the principles set forth in this Order. A law is substantive for Rules of Evidence purposes if either of two aspects is satisfied: (1) the law has a nonprocedural purpose; or (2) even if the law is purely procedural, it is calculated to affect behavior at the planning, rather than at the disputative, stage of activity.

A necessary part of making the substantive/procedural determination is examining the state law in question. Section 1402(f) states, "Evidence of a person's failure to wear a safety belt as required by this act shall not be admissible in any civil action." Wyo. Stat. Ann. § 31–5–1402(f)(LexisNexis 2003). When examining a statute, the Court's primary obligation is to determine the legislature's intent. *State ex rel Motor Vehicle Div. v. Holtz*, 674 P.2d 732, 736 (Wyo.1983). If the language is sufficiently clear, the Court will not resort to rules of construction. *Id.* Instead, the Court will look to the ordinary and obvious meaning of the statute. *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1042 (Wyo.1993). When the language is not clear or is ambiguous, the Court

> must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent.

*Fontaine v. Board of County Comm'rs of Park County*, 4 P.3d 890, 894–95 (Wyo. 2000) (internal quotations and citations omitted).

Application of these principles of interpretation to the statute in question leads

---

**4.** *See also* 19 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4512.

> [A] number of the Rules of Evidence require supplementation from external sources of law, which in some instances may be state law. The most significant of these implicit references to state law involves the definition of relevant evidence under Rule 401 in cases in which state substantive law controls under the principles of *Erie*.... Deciding whether evidence is relevant and hence admissible as to an issue governed by state law sometimes requires careful analysis to distinguish between materiality (... an issue that is governed by the applicable state substantive law) and relevance (... an issue that is governed by the federal standard defined in Rule 401 and not by state law).
>
> Finally, it should be noted that there is a varied collection of state law rules that, because their application results in the exclusion of evidence, sometimes are considered rules of evidence, but in fact serve substantive state policies and are characterized more properly as rules of substantive law within the meaning of the *Erie* doctrine. Among these rules are ... rules regarding the admissibility of prejudicial evidence. Properly construed, the Federal Rules of Evidence do not affect or alter these "substantive rules of evidence," which are enforced in federal court.
>
> *Id.*

the Court to conclude that the language of the statute is clear; the legislative intent is to bar admission of evidence of nonuse of a safety belt in any civil action, including this one. In doing so, the legislature impliedly advances the substantive principle that seat belt nonuse cannot be used to establish comparative fault. This interpretation of the legislature's intent is supported by the other provisions of § 31–5–1402. Subsections (a) and (b) codify the common law duty to "buckle up" with five exceptions. Subsections (c) and (d) limit the effects of one's violation of the law. Failure to wear a seat belt is not considered a moving violation for the purpose of suspending the offender's driver's license. WYO. STAT. ANN. § 31–5–1402(c) (LexisNexis 2000). Moreover, a violation of this statute is neither grounds for raising the offender's insurance premiums, nor is it a part of the abstracts kept by the Wyoming Depart-

ment of Transportation. *Id.* In addition, not only can a vehicle not be stopped solely for a violation of § 31–5–1402, but also at the time of the accident giving rise to this litigation, an offending party could not be cited unless and until a citation had been issued for a moving violation of the motor vehicle laws.[5] *Id.* § 1402(d). Subsection (e) limits the amount of the fine for failure to wear a seat belt to $25 for drivers and $10 for passengers. *Id.* § 1402(e). In addition, compliance with this statute entitles any person cited for violations of the motor vehicle laws to a $10 reduction in the fine otherwise imposed. *Id.* Subsection (f), when read in conjunction with § 31–5–1402 as a whole, reflects the legislature's intent to make safety belt use mandatory, but to minimize any penalty for nonuse, and to isolate nonuse from any connotation of fault.[6] *See e.g., Gardner v. Chrysler Corp.,* 89 F.3d 729, 736 (10th Cir.1996).

**5.** "It is well settled that retroactive application of statutes is not favored and will not occur absent clear legislative intent." *Dellapenta v. Dellapenta,* 838 P.2d 1153, 1160 (Wyo.1992) (citations omitted). The Court finds no such legislative intent present.

**6.** In an effort to convince this Court not to apply § 1402(f) to the case at bar, Defendant directs the Court's attention to the Wyoming Supreme Court's decision in *Dellapenta.* In that case, the supreme court permitted the "introduction of evidence of seat belt nonuse where an offer of proof is made to show a causal relationship between nonuse and injuries to the occupant." *Dellapenta,* 838 P.2d at 1162. The fatal flaw in Defendant's reliance upon *Dellapenta* is that though the case was decided in 1992, three years after the enactment of § 31–5–1402(f), the accident giving rise to the cause of action occurred in November 1987, approximately 20 months before the enactment of the statute. As such, the supreme court did "not apply the Wyoming statute retroactively to prohibit the introduction of seat belt evidence . . . ." *Id.* (citing *Kolbeck v. General Motors Corp.,* 745 F.Supp. 288, 294 (E.D.Pa.1990) (noting that federal court applying Pennsylvania law refused to apply statute prohibiting the intro-

duction of seat belt evidence retroactively where doing so would alter the substantive rights of the litigants)).

An additional point is worth noting here. Defendant also relies upon *Dellapenta* in its efforts to urge this Court to find that a common law duty to wear a safety belt survived the enactment of § 1402. Moreover, it is with respect to Plaintiff's violation of this common law duty that Defendant seeks the admission of evidence of seat belt nonuse. With respect to the existence of a common law duty to "buckle up", the Court finds that by enacting § 1402, the legislature effectively abrogated the common law insofar as it relates to one's duty to wear "a properly adjusted and fastened safety belt when the motor vehicle is in motion on public streets and highways." WYO. STAT. ANN. § 31–5–1402(a) (LexisNexis 2003). According to the evidence in this case, Patricia Huff was operating a motor vehicle on a public street or highway. As such, the issue of whether she was wearing a safety belt properly falls under the purview of § 1402. Accordingly, it is not for this Court to decide whether any circumstances exist under which the common law duty to wear a safety belt survives the enactment of § 1402.

Having interpreted the statute in question, the Court finds that the substantive principle implied in the language of § 1402(f) is that noncompliance with the statute cannot be used to establish comparative fault.[7] Thus, standing alone, subsection (f) has a nonprocedural purpose. Nevertheless, assuming that the statute is purely procedural, the Court must decide whether § 1402(f) is calculated to affect behavior at the planning stage of activity. At a minimum, this phrase refers to out of court activity. As it arises in this case, the Court determines the planning stage of activity to be the moment at which § 1402(a) by its own terms applies to one's activity; for as explained previously, subsection (f) must be read *in pari materia* with the other provisions of § 1402. Subsection (a) applies to one's activity when the motor vehicle in which she is an occupant becomes in motion on a public street or highway of the State. It is precisely at that point that the occupant incurs a statutory duty to buckle her seat belt. Thus, it is precisely at this point that subsection (f) must be calculated to have an effect on one's choice to wear a safety belt if that provision is to be found substantive in nature and have any bearing on this case. The Court concludes that subsection (f)'s prohibition of evidence of seat belt nonuse in any civil action, especially when read in light of the other limitations on the effect of seat belt nonuse included in § 1402, could be calculated to have such an effect.

Accordingly, the Court is left to conclude that § 1402(f) is substantive law. The Court's conclusion finds limited support from applicable case law. In *Dellapenta v. Dellapenta*, 838 P.2d 1153 (Wyo. 1992), the Wyoming Supreme Court permitted the "introduction of evidence of seat belt nonuse where an offer of proof is made to show a causal relationship between nonuse and injuries to the occupant" of the vehicle involved in the accident. *Dellapenta*, 838 P.2d at 1162. Though the case was decided in 1992, three years after the enactment of § 1402(f), the accident giving rise to the cause of action occurred in November 1987, approximately 20 months before the enactment of the statute. In deciding whether to admit evidence of seat belt nonuse, the supreme court did "not apply the Wyoming statute retroactively to prohibit the introduction of seat belt evidence ...." *Id.* Implicit in this refusal is an acknowledgment that § 1402(f) is substantive law. Had the supreme court considered the law to be procedural, and therefore remedial in nature, it would have retroactively applied the statute. That the supreme court considers § 31–5–1402(f) to be a substantive law is further shown by its reference to *Kolbeck v. General Motors Corp.*, 745 F.Supp. 288, 294 (E.D.Pa.1990) (noting that federal court applying Pennsylvania law refused to apply statute prohibiting the introduction of seat belt evidence retroactively where doing so would alter the substantive rights of the litigants), in support of its decision not to retroactively apply the law.

In addition to the Wyoming Supreme Court's implicit recognition that § 1402(f) is substantive law, the United States Court of Appeals for the Tenth Circuit in *Gardner v. Chrysler Corp.*, 89 F.3d 729 (10th Cir.1996), determined that a similar Kansas seat belt statute was substantive law. In so finding, the court merely stated:

> Kan. Stat. Ann. § 8–2504(c) is not simply a rule of evidence, which we could then ignore under our diversity jurisdiction, but represents the substantive law of Kansas, one concerned with the chan-

---

7. The relationship between §§ 31–5–1402(f) and 1–1–109 is discussed further on in the Order.

neling of behavior outside the courtroom, and where as in this case the behavior in question is regulated by state law rather than by federal law, state law should govern even if the case happens to be in federal court.

*Id.* at 736 (internal quotations and citations omitted). Though the court's decision provides little rationale to aid lower courts who must follow suit, this Court is obligated to follow that decision as the controlling law of the Circuit. In light of the above, the Court determines that § 1402(f) is not merely "a rule of evidence, which [the Court] could then ignore ..., but represents the substantive law of [Wyoming]." *See Id.* As such, this Court will apply that law unless grounds for refusal to do so appear otherwise.

 In response to this Court's Order, dated June 2, 2003, requesting additional briefing on the constitutionality of § 1402(f), Defendant urges this Court not to apply the law because it violates provisions of both the Wyoming and the United States Constitutions. Specifically, Defendant posits that the statute violates the "separation of powers" doctrine of the Wyoming Constitution, Article 2, section 1, and denies the Defendant equal protection and due process under both the Wyoming and United States Constitutions. The Court addresses each of these arguments in turn. With respect to Defendant's "separation of powers" argument, having previously determined that § 1402(f) is a substantive law, its enactment therefore being inherently within the powers delegated to the legislature by the Wyoming Constitution, *Squillace v. Kelley*, 990 P.2d 497, 501 (Wyo.1999), the Court finds that it does not violate the separation of powers doctrine.[8]

 Defendant also argues that § 1402(f) is unconstitutional because it violates the equal protection clauses of the Wyoming and United States Constitutions. The federal equal protection clause provides, "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend XIV, § 1. The Wyoming Constitution does not contain such an express equal protection clause; rather, it contains a variety of equality provisions. *See* WYO. CONST. art. 1, §§ 2, 3, and 34; art. 3, § 27. Despite the difference in text, "the federal equal protection clause and the Wyoming equality provisions have the same aim in view." *Greenwalt v. Ram Restaurant Corp.*, 71 P.3d 717, 730 (Wyo.2003) (internal quotations and citations omitted). When a state statute is challenged on equal protection grounds, the Court's first task is to decide the appropriate level of "scrutiny" to be applied to the particular legislative action. In this respect, the Supreme Court has held that "unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (citations omitted). All parties concede, and the Court agrees, that rational basis review is the appropriate standard under which § 1402(f) should be examined.

---

8. The defendant urges this Court to find that W.S. § 1402(f) is a procedural rule that violates the state separation of powers doctrine. In response, the State of Wyoming and the Wyoming Trial Lawyers Association argue as *amici curiae* that under the "outcome determinative" test, the statute is substantive and therefore not violative of the separation of powers doctrine. As has been shown, the outcome determinative test has no application to the circumstances of this case.

Under rational basis review, the party challenging the constitutionality of the legislative act at issue bears the "heavy burden of demonstrating ... beyond a reasonable doubt", *Greenwalt*, 71 P.3d at 730, that the statutory classification bears no rational relationship to a legitimate state objective. *Clajon Prod. Corp. v. Petera*, 854 F.Supp. 843, 854–55 (D.Wyo.1994). With respect to the statutory classification, a rational basis inquiry "employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (citations omitted). Additionally,

> The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it.

*McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). "A classification in a statute ... comes to the reviewing court bearing a strong presumption of validity." *Greenwalt*, 71 P.3d at 730.

According to the State of Wyoming, the legislation at issue in this case has drawn an explicit distinction between vehicle occupants who wear seat belts and those who do not. Br. for State of Wyoming at 9. Implicit in this distinction is the classification between defendants in lawsuits arising from automobile accidents who are sued by plaintiffs who wore their seat belts, and those sued by plaintiffs who were not wearing their seat belts. *Id.* Defendant objects to this classification, stating that nothing about defendants in such tort actions justifies this type of disparate treatment. Def.'s Br. at 13. Nevertheless, Defendant's unhappiness with the classification is an inevitable result of this type of socio-economic line drawing. That virtually similarly situated defendants have the potential to be treated differently inheres in this type of legislation. As the Wyoming Supreme Court stated,

> Defining the class of persons subject to a regulatory requirement inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration. Such scope-of-coverage provisions are unavoidable components of most social legislation. The necessity of drawing lines renders the precise coordinates of the resulting legislative judgment virtually unreviewable because the legislature must be allowed leeway to approach a perceived mischief incrementally.

*Greenwalt*, 71 P.3d at 731.

As pertaining to the relationship between the classification and the legitimate state objective it purports to serve, "this Court's review is limited to deciding whether it is 'conceivable' that the statute serves legitimate state objectives." *Clajon*, 854 F.Supp. at 856. "Governmental bodies have wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Allright Colorado, Inc. v. City and County of Denver*, 937 F.2d 1502, 1512 (10th Cir.1991) (citations omitted). *Accord Greenwalt*, 71 P.3d at 730 ("Equal protection is not a license for

courts to judge the wisdom, fairness, or logic of legislative choices and line-drawing."). In fact, this Court need not satisfy itself "that the challenged [statute] will in fact further [its] articulated purposes; it is sufficient if the legislature could rationally have concluded that the purposes would be achieved." *Allright*, 937 F.2d at 1512 (internal quotations and citations omitted). In essence, "[t]he Supreme Court has made it clear that statutory classifications will be set aside as violative of equal protection only if no grounds can be conceived to justify them as rationally related to a legitimate state interest." *United States v. Lee*, 957 F.2d 778, 782 (10th Cir.1992). According to the Wyoming Supreme Court, the legislature is never required to "articulate its reasons for enacting a statute; therefore, it is entirely irrelevant for equal protection purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Greenwalt*, 71 P.3d at 730.

With respect to the legitimate state interest sought to be advanced by § 31–5–1402, the Defendant contends that the overriding purpose of the statute is to encourage the use of safety belts. This is true, but it is only half of the statute's intended purpose. As stated above, the statute's purpose is to encourage seat belt use while limiting the penalties for seat belt nonuse and preserving the right to compensation for accidents caused by negligent tortfeasors. By prohibiting the admission of evidence of seat belt nonuse in any civil action, the legislature has advanced the substantive principle that seat belt nonuse is a fact having no conse-

quence in the determination of personal injury actions such as the one at bar.[9]

Having thus identified the legislative classification at issue and the legislative objectives sought to be achieved by the classification, it now remains for the court to determine whether the legislature's classification is reasonable in light of its purposes. *McLaughlin v. Florida*, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). This, however, is "the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." *City of Dallas v. Stanglin*, 490 U.S. 19, 26, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989).

In enacting socio-economic legislation,

> [t]he legislature is presumed to have acted upon a knowledge of the facts and to have had in view the promotion of the general welfare of the people as a whole. The legislature having presumably determined that a difference of conditions exists rendering the legislation proper, the court must be able to say, upon a critical examination of the statute in the light of the object sought to be accomplished, or the evil to be suppressed, that the legislature could not reasonably have concluded that distinctions existed relating to the purpose and policy of the legislation.

*Greenwalt*, 71 P.3d at 731. It is this Court's opinion that statutes such as § 31–5–1402(f) cast grave doubts upon the legislature's wisdom and its adherence to its obligation to act for the good of the people of this State who elected them to office,

---

9. Though the Defendant invites the Court to discuss the applicability of products liability case law to the case at bar, the Court declines the invitation. Specifically, the Defendant refers to *Bradley v. General Motors Corp.*, No. 94–CV–168–D, wherein the jury verdict form contained the following special interrogatory: "Was Plaintiff Kevin Bradley wearing his seatbelt at the time of the accident?" For informative purposes only, the Court notes that the preclusion of evidence of seat belt nonuse was never an issue in that case. Accordingly, Defendant's reliance upon it is misplaced, and it has no application to the case at bar.

rather than for the benefit of powerful lobbyist groups. It is not for this Court, however, to judge the wisdom behind these official acts, for long gone are "[t]he days when the federal courts sat as super-legislatures to second-guess the wisdom of state laws ...." *Clajon*, 854 F.Supp. at 856. Clearly, the Court is not without its doubts; yet, "[a]ll reasonable doubts are to be resolved in favor of the validity of the statute." *Greenwalt*, 71 P.3d at 731. Thus, a law will be upheld unless the legislature's action is "clearly wrong, a display of arbitrary power, not an exercise of judgment." *Mathews v. deCastro*, 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976) (internal quotations and citation omitted). When considered in this context, it is conceivable that § 1402(f) serves the purposes for which it was enacted.[10]

The Court has reviewed time and again the arguments advanced by the Defendant in support of her position that there is no rational relationship between the classification and the stated objective. The Court presumes that the legislature was aware of the published statistics and studies on the effectiveness of seat belt use, *see e.g., Dellapenta*, 838 P.2d at 1158–59, when it enacted § 31–5–1402.[11] The Court also presumes despite its misgivings that in passing this statute, the legislature had in view the promotion of the general welfare of the people of Wyoming as a whole. The Court cannot say that the legislature could not reasonably have concluded that distinctions existed relating to the purpose and policy of § 1402(f). Though it is difficult to see how § 1402(f) encourages seat belt use, it is equally difficult to conclude that subsection (f) discourages seat belt use. Moreover, encouraging the use of seat belts is a rational exercise of legislative power. That the legislature also chose to impose limitations upon the means of such encouragement is not irrational. The Court concludes, therefore, that

> acting in a rational and nondiscriminatory manner, the legislature set the state's public policy, but weighed the positive benefits of the policy against the severity of the penalty for non-compliance. This it has a right to do.... [T]he legislature may ensure that those who cause vehicular collisions are not permitted to escape liability by raising the defense that the injured party was not wearing a seat belt.

*C.W. Matthews Contracting Co., Inc. v. Gover*, 263 Ga. 108, 428 S.E.2d 796, 798–99 (1993). *See also Bendner v. Carr*, 40 Ohio App.3d 149, 532 N.E.2d 178, 181 (1987) ("The legislature undoubtedly concluded that seat-belt use was desirable, and that although the enactment of a law providing

---

**10.** Many state courts across the country have considered arguments virtually identical to those advanced by the Defendant. Some of the notable cases discussing the legitimate state interests sought to be advanced by the challenged statutes are *Bower v. D'Onfro*, 38 Conn.App. 685, 663 A.2d 1061 (1995), *C.W. Matthews Contracting Co., Inc. v. Gover*, 263 Ga. 108, 428 S.E.2d 796 (1993), *Duntz v. Zeimet*, 478 N.W.2d 635 (Iowa 1991), *Ullery v. Sobie*, 196 Mich.App. 76, 492 N.W.2d 739 (1992), *Mott v. Sun Country Garden Products, Inc.*, 120 N.M. 261, 901 P.2d 192 (1995), and *Bendner v. Carr*, 40 Ohio App.3d 149, 532 N.E.2d 178 (1987). For a complete discussion of state court treatment of state seat belt

laws, see Christopher Hall, Annotation, *Non-use of seatbelt as reducing amount of damages recoverable*, 1998 WL 677205, 62 A.L.R. 5th 537 (1998).

**11.** Under this presumption, the Court finds unpersuasive the Defendant's discussion of *Nehring v. Russell*, 582 P.2d 67 (Wyo.1978) and its applicability to the case at bar. The facts and statistics available to the legislature during the enactment of § 31–5–1402 lead to the same inescapable conclusion at which one would arrive if considering present-day information—wearing a seat belt greatly reduces the likelihood of serious injury or death resulting from an automobile accident.

**1212**

for small fines would encourage people to 'buckle up,' an injured plaintiff should nevertheless not be denied recovery when involved in a collision with a negligent tortfeasor.").

Having so concluded, it is prudent to address the Defendant's contention that the legislature did not have a rational basis for enacting § 1402(f) when read in conjunction with § 1–1–109. A similar argument was raised by appellant in *Dellapenta*. In that case, the Wyoming Supreme Court acknowledged that "[n]onuse of available seat belts has been allowed as a defense to actions in ... comparative ... negligence ...." *Dellapenta*, 838 P.2d at 1161. Though the appellant presented the question of the admissibility of seat belt nonuse as an evidentiary issue, the supreme court avoided analyzing the issue in light of § 1–1–109, stating, "[O]ur analysis of this claim will place it in the light of a second negligence claim or action against [defendant]."[12] *Id.* at 1162. Rather than unnecessarily discuss the seat belt defense, the court concluded that nonuse of available seat belts is relevant to establishing the causal relationship between the breach of a parent's duty to exercise reasonable care on behalf of her child and the injuries sustained by the child.[13] *Id.*

■ Due to the facts of this case, the Court requested additional briefing on whether the legislature had a rational basis for passing § 1402(f) when read in conjunction with § 1–1–109. The Court gratefully acknowledges the excellent manner in which the parties and amici ably presented their positions. It is a well-established principle of Wyoming law that the legislature enacts statutes with full knowledge of the existing conditions of the law and with reference to it. *See Almada v. State*, 994 P.2d 299, 306 (Wyo.1999). In conjunction with this principle, reviewing courts are to construe the challenged statutes in harmony with existing law and as part of a general and uniform system of jurisprudence. *Keller v. Merrick*, 955 P.2d 876, 879 (Wyo.1998).

■ Though somewhat difficult to comprehend, the Defendant contends that §§ 31–5–1402(f) and 1–1–109 cannot be construed in harmony. The Defendant asserts that the overriding public policy associated with the adoption of the comparative fault statute is to guarantee basic fundamental fairness to all tort litigants by insuring that a party is only held responsible for that portion of the damages proximately caused by his or her own fault. Def.'s Br. At 22. Section 1402(f) "thwarts this most fundamental public policy be relieving a person of responsibility for his or her fault in causing or enhancing injury without any discernible justification." *Id.* Under subsection (f), a defendant is required "to not only shoulder his/her own fault, but also to bear the responsibility for that portion of the damage proximately caused by the unbelted person's negligence ...." *Id.* at 25. Thus, the Defendant seems to argue, the legislature could not have had as its objective in enacting § 1402(f) the legislating of proximate

12. Comparative fault was not an issue because the one car accident was caused by the mother's negligence. The plaintiff father, on behalf of his injured children, sought to introduce evidence that the children were not wearing a seat belt in breach of the mother's duty to buckle up the children. The supreme court appropriately classified the issue as a second claim of negligence against the mother.

13. It is significant to note that, contrary to Defendant's assertion and in light of the *Dellapenta* court's conclusions, the "seat belt defense" has never been recognized as a valid defense in Wyoming. Accordingly, § 1402(f) does not alter the substantive law by depriving any defendant of this defense.

cause because it has already done so under § 1–1–109.

The Defendant's position is not well-taken. As explained by the *Greenwalt* court, "While it is true that the legislature in [§ 1–1–109] generally espoused the comparative negligence approach for negligence actions, this is not to say that the legislature is precluded from subsequently limiting, or even rejecting altogether, the application of comparative negligence in negligence actions arising out of particular circumstances."[14] *Greenwalt,* 71 P.3d at 735 (citations omitted). That is what the legislature has done in § 1402(f). The legislature has limited the application of comparative fault principles to negligence actions arising out of automobile accidents involving unbelted occupants. This it has a right to do.[15] Accordingly, the Court finds no inconsistency in the application of § 1402(f) in light of § 1–1–109.

Having completed its rational basis review, the Court holds that the Defendant has not demonstrated beyond a reasonable doubt that § 1402(f) violates the equal protection guarantees of the United States and Wyoming Constitutions.

■ The Defendant also claims that § 1402(f) violates the substantive due process requirements of the United States and Wyoming Constitutions by arbitrarily depriving her of her property by requiring her "to pay more than [her] fair share of the total fault; in other words, to pay for damages proximately caused by the fault of someone else." Def.'s Br. At 29. Both the United States and Wyoming Constitutions impose due process limitations on exercises of the police powers. The Fifth and Fourteenth Amendments to the United States Constitution and Article 1, § 6 of the Wyoming Constitution all assert that no person shall be deprived of life, liberty or property without due process of law.

A statute lying within the economic or social welfare area that does not implicate or infringe a fundamental right will withstand substantive due process review if the legislature rationally could have concluded that it serves a legitimate state interest. In this case, all parties concede, and the Court agrees, that § 1402(f) does not involve a fundamental right. So, the statute will be upheld so long as it promotes a legitimate public objective through reasonable means. *Board of County Comm'rs v. Crow,* 65 P.3d 720, 727 (Wyo.2003). In applying this test, the Court will

> inquire only as to whether [§ 1402(f)] is of debatable reasonableness. In other words, if the Court perceives that the legislature had some arguable basis for choosing the end and the means, it will sustain the [statute] at least as to compliance with substantive due process. Only when the [statute] amounts to an

---

**14.** The legislature's ability to modify the effects of § 1–1–109 in particular circumstances is also borne out in a fundamental principle of statutory interpretation providing that statutes intended to govern specific situations control over general statutes involving the same subject matter. *Wetherill v. Bank IV Kansas, N.A.,* 145 F.3d 1187, 1193 (10th Cir. 1998); *Board of County Comm'rs v. Exxon Mobil Corp.,* 55 P.3d 714, 723 (Wyo.2002). In this case, the specific language of § 1402(f) governing negligence claims arising from automobile accidents controls over the general language of § 1–1–109 applicable to all negligence actions.

**15.** The enactment of § 1402(f) is not the first time the legislature has undertaken to modify the reach of § 1–1–109. In addition to the Dram Shop statute, WYO. STAT. ANN. § 12–8–301 (LexisNexis 2003), discussed at length in *Greenwalt,* the legislature has enacted the Wyoming Recreation Safety Act, WYO. STAT. ANN. §§ 1–1–121 to 1–1–123 (LexisNexis 2003), which limits the application of comparative negligence by limiting the duty which a provider owes to a participant. *See also Halpern v. Wheeldon,* 890 P.2d 562 (Wyo.1995).

arbitrary deprivation of [defendants'] property will it be deemed to violate the dictates of substantive due process.

*Id.*

As explained above in the Court's equal protection analysis, the Court finds under this deferential standard of scrutiny that the legislature's objective in enacting § 1402(f) is legitimate. Moreover, the means chosen to do so, *i.e.*, the classification, are grounded in a rational basis. Therefore, the Court incorporates its findings under its equal protection rational basis review and concludes likewise that § 31–5–1402(f) does not violate the substantive due process guarantees of the United States and Wyoming Constitutions. *See also Carrasquilla v. Mazda Motor Corp.*, 166 F.Supp.2d 181, 186–87 (M.D.Pa. 2001); *C.W. Matthews Contracting Co., Inc., v. Gover*, 263 Ga. 108, 428 S.E.2d 796, 798–99 (1993); *Mott v. Sun Country Garden Prods., Inc.*, 120 N.M. 261, 901 P.2d 192, 197–98 (1995); *Bendner v. Carr*, 40 Ohio App.3d 149, 532 N.E.2d 178, 181–82 (1987). THEREFORE, it is hereby

**ORDERED** that Plaintiff's Motion in Limine is **GRANTED**. It is further **ORDERED** that evidence on the issue of whether Plaintiff's decedent was wearing her seat belt at the time of the collision is **INADMISSIBLE** at trial. It is further **ORDERED** that Defendant's Motion to Certify is **DENIED**.